680 So.2d 1302 (1996)
Donna Sue RAMIREZ, Plaintiff-Appellant,
v.
Mary WARE, et al., Defendants-Appellees.
No. 28879-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*1303 Jack M. Bailey, Jr., J. Allen Cooper, Jr., Shreveport, for Appellant.
Theodore J. Casten, Shreveport, for Appellee.
Before NORRIS, BROWN and GASKINS, JJ.
GASKINS, Judge.
This appeal arises from a two-car collision on an interstate entrance ramp in which the vehicle driven by the plaintiff, Donna Sue Ramirez, was rear-ended by a car driven by defendant Mary Ware. Following a jury trial, the plaintiff appealed from a trial court judgment which assessed 40 percent comparative fault against her, awarded what she considers inadequate damages, and denied her request for attorney fees and penalties against Mrs. Ware's auto insurer. For the reasons assigned below, we amend the judgment to reduce the comparative fault assessed against the plaintiff to 20 percent and *1304 to increase the special damages. In all other respects, the judgment is affirmed.

FACTS
On April 3, 1992, the plaintiff drove her 1982 Ford Thunderbird north on Youree Drive in Shreveport onto the interstate entrance ramp for I-20 East. Mrs. Ware was driving her vehicle, a 1986 Toyota Cressida, directly behind the plaintiff. The entrance ramp traveled by both motorists is a single lane leading from Youree Drive to I-20 East. However, it first joins with a traffic lane from Market Street. The traffic coming from Youree Drive is met with a yield sign directing motorists to yield to the oncoming traffic from Market Street, which has the right-of-way. The two lanes merge into one lane, which then becomes the Traffic Street exit on I-20 East. Traffic in this lane must either merge left almost immediately into one of the continuing lanes of the interstate or exit onto Traffic Street in Bossier City. Or, put another way, the Youree Drive entrance ramp merges with the Market Street entrance ramp and quickly becomes an exit ramp unless a motorist merges left to continue on I-20.
The plaintiff testified that when she yielded to oncoming traffic in the Market Street lane, in compliance with the yield sign, Mrs. Ware struck her from behind. However, Mrs. Ware testified that, after she saw the plaintiff proceed past the yield sign into the lane formed by the merger of the Market Street and Youree Drive lanes, she herself turned to check on the traffic approaching in the Market Street lane. According to her estimations, she looked backwards for between four to 30 seconds, and her speed of travel was 25 to 30 mph. Seeing no oncoming vehicles, she proceeded forward. Only then did she turn back around and observe, to her surprise, that the plaintiff had stopped several car lengths beyond the yield sign. Mrs. Ware further testified that she attempted to avoid the accident by going around the plaintiff, but the passenger side of her car clipped the back end of the driver's side of the plaintiff's car.
Due to neck and back injuries sustained in the collision, the plaintiff was transported to the hospital by ambulance. Although she was discharged the same day, she returned to the emergency room the next day complaining of pain and shortness of breath. According to the plaintiff, a prior ankle injury was aggravated by the accident. The plaintiff remained under a doctor's care for about three months. At trial, she testified that she was still suffering back problems as a result of the accident.
The plaintiff filed suit against Mrs. Ware and her insurer, State Farm Mutual Automobile Insurance Company. She also sued her own insurer, Louisiana Indemnity Company, but dismissed it prior to trial.
The case was tried before a jury, which found both drivers at fault. Comparative fault of 60 percent was assessed against Mrs. Ware and 40 percent against the plaintiff. As to damages, the jury awarded the following:

Property damage $1,250.00
Past medical expenses 4,727.77
Past lost wages 840.00
Past, present, future physical and
 mental pain & suffering 5,000.00
Loss of earning capacity -0-

The jury also found that State Farm had not violated its duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the plaintiff.
The plaintiff appealed.

COMPARATIVE FAULT
The plaintiff contends that the jury erred as a matter of law in assessing any comparative fault against her and in not finding Mrs. Ware 100 percent at fault. According to the plaintiff, Mrs. Ware was inattentive at what she knew was a dangerous intersection.

Law
La.R.S. 32:81 imposes a duty on a motorist not to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway. Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached this duty, and hence, is presumed negligent. Mart v. Hill, 505 So.2d 1120 (La.1987). In *1305 addition to the duty to follow another vehicle at a reasonable and prudent distance, a motorist also has a duty to maintain a careful lookout, observe any obstructions present, and exercise care to avoid them. Ly v. State Department of Public Safety and Corrections, 633 So.2d 197 (La.App. 1st Cir.1993), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835.
In order to avoid liability, a following motorist who rear-ends another vehicle must prove a lack of fault; he may do so by establishing that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance under the circumstances. Chambers v. Graybiel, 25840 (La. App.2d Cir. 6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377.
According to the principles of comparative fault set forth in La.C.C. art. 2323, a plaintiff whose negligence contributes to her own injuries for which she seeks damages shall have her claim reduced in proportion to her degree of fault. Gray v. Louisiana Downs, 585 So.2d 1238 (La.App. 2d Cir.1991).
In allocating comparative fault, consideration must be directed toward the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. Some of the factors which may influence the degree of fault assigned in that assessment are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger; 2) how great a risk the conduct created; 3) the significance of what the actor sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985); Gray v. Louisiana Downs, supra; Underwood v. Dunbar, 628 So.2d 211 (La. App. 2d Cir.1993), writ denied, 94-0026 (La.2/25/94), 632 So.2d 767.
A court of appeal may not set aside a trial court's or jury's findings of fact in the absence of clear or manifest error. Stobart v. State, Through Department of Transportation & Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The Supreme Court has announced a two-part test for reversing a fact finder's determinations:
(1) [t]he appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Mart v. Hill, supra.
Allocation of fault is also a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. After the court of appeal finds a "clearly wrong" apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. It is the court of appeal's duty to give some deference to the trier of fact. Clement v. Frey, 95-1119 & 95-1163 (La.1/16/96), 666 So.2d 607.

Discussion
The location of the collision in the present case was identified by several witnesses as a dangerous intersection and the site of numerous auto accidents. In fact, another accident occurred at approximately the same place shortly after the present accident. Two particularly hazardous features were the curve in the Market Street entrance ramp and a concrete barrier between the two lanes which made it difficult for vehicles at the yield sign to determine whether there was any oncoming traffic.
The plaintiff testified that she slowed down, but did not completely stop, at the yield sign to allow a truck in the Market Street lane to proceed. According to her version, at this point, she was struck from behind by the defendant driver, Mrs. Ware. In Mrs. Ware's testimony, she insisted that the plaintiff had proceeded past the yield sign and that she did not observe any oncoming traffic in the Market Street lane.
*1306 In order to have assessed fault of 40 percent against the plaintiff, the jury must have given no credence to the testimony of the plaintiff that she was slowing down at the yield sign, waiting for the passage of oncoming traffic. Instead, the jury must have made a credibility call and wholly accepted the testimony of Mrs. Ware that the collision occurred past the yield sign and that the plaintiff had suddenly stopped. However, even if the jury made such a determination, it erred in assessing such a high degree of fault against the plaintiff. Mrs. Ware professed to be well-acquainted with this particular stretch of interstate. Because she was familiar with this area, she knew or should have known that, once past the yield sign, the plaintiff was confronted with a choice of either merging into the traffic on I-20 or proceeding in the same lane and exiting at Traffic Street. If the plaintiff was going to merge onto the interstate, this maneuver would require great care and a cautious look-out. However, the plaintiff should not have made a sudden stop. A following motorist such as Mrs. Ware, nonetheless, had a high duty of care to maintain control over her own vehicle, observe the traffic ahead, and follow at a safe distance. We find that, even if the jury accepted Mrs. Ware's version of the accident, the highest percentage of fault which could be assessed against the plaintiff is 20 percent. Conversely, we find that the lowest degree of fault which could be assessed against Mrs. Ware is 80 percent.
The judgment of the trial court will be amended accordingly.

GENERAL DAMAGES
The plaintiff seeks to increase her general damage award from $5,000 to a minimum of $10,000.

Law
In reviewing a general damage award, the initial inquiry is whether the award for the particular injuries and their effects to the injured person is an abuse of the trier of fact's great discretion. An appellate court should modify a jury award only when it is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Only after an abuse of discretion is noted will a resort to prior awards be appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, supra.
In determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987); Sledge v. Continental Casualty Co., 25770 (La.App. 2 Cir. 6/24/94), 639 So.2d 805.

Discussion
The medical evidence shows that the plaintiff sustained a myoligamental strain in the neck and upper back, and a similar injury to her lower back which aggravated a preexisting degenerative change in the last joint in her back. She also complained of ankle pain at the site of a prior surgery. However, the testimony of her treating physician, Dr. Edmund C. Simonton, Jr., established that the plaintiff had an uneventful recovery and that he released her from treatment as fully recovered approximately three months after the accident. He characterized the strain as mild to moderate. Although she returned to see him in 1994 complaining of weakness in her lower back, he did not believe this was related to the accident.
Dr. A.R. Ebrahim, an internist, treated the plaintiff for shortness of breath and difficulty swallowing. In his opinion, the shortness of breath was most probably related to her obesity, not the auto accident. He diagnosed her difficulty swallowing as a fairly mild case of dysphagia which required no follow-up visit.
In view of the medical evidence that the plaintiff's injuries were moderate and resolved quickly, we cannot find that the jury abused its great discretion in awarding damages of only $5,000.
Therefore, the award of general damages is affirmed.

*1307 LOST WAGES
The plaintiff contends that the jury erred in awarding only $840 in lost wages. We agree. The plaintiff presented evidence that she was unable to work for one month after the accident and that she lost $1,680 in wages as a result. No other evidence was introduced that would support the jury's lower award nor was the plaintiff's claim of $1,680 in lost wages controverted at trial. The jury could have rejected or accepted the lost wages evidence in toto, but the jury had no basis in evidence to reduce the lost wages claim. The jury was manifestly erroneous in reducing the lost wages claim. The jury did, however, find that plaintiff suffered lost wages and was entitled to recover these damages. Therefore, we increase the award for lost wages from $840 to $1,680.
The judgment will be amended accordingly.

PROPERTY DAMAGES
The plaintiff also maintains that she was entitled to a total of $2,309.80 in property damages, subject to a credit of $750 tendered to her by State Farm, or $1,559.80. The jury awarded only a total of $1,250.
We agree that the plaintiff is entitled to an increase. The defense own' witness, State Farm claims representative Terry Frisch, testified that he valued her car at $1,770, minus $300 for prior damage, or $1,470.[1] Additionally, we find that the plaintiff was entitled to recover $571 in towing and storage expenses, or a total of $2,041. (The defendants are entitled to a credit of $750 for the amount they already paid to the plaintiff.)
Therefore, the trial court judgment is amended to award the plaintiff property damages of $2,041, subject to the $750 credit.

PENALTIES AND ATTORNEY FEES
Furthermore, the plaintiff asserts that State Farm breached its independent duty under La.R.S. 22:1220 to adjust her claim fairly and promptly. She contends that she is entitled to penalties and attorney fees pursuant to La.R.S. 22:1220 and 22:658.
La.R.S. 22:1220 provides, in pertinent part:
A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * * * * *
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
* * * * * *
A plaintiff seeking penalties under La.R.S. 22:1220 has the burden of proof. Hall v. State Farm Mutual Automobile Insurance Company, 94-867 (La.App. 3d Cir. 5/31/95), 658 So.2d 204; Romero v. Gary, 619 So.2d 1244 (La.App. 3d Cir.1993). Since La. R.S. 22:1220 is a penal statute, it must be strictly construed. Hernandez v. Continental Casualty Insurance Co., 615 So.2d 484 (La.App. 4th Cir.1993), writ denied, 620 So.2d 850 (La.1993); Romero, supra.
Although the plaintiff makes specific reference in her brief to *1308 22:1220(B)(5), that section applies only to claims due to an insured. Dier v. Hamilton, 600 So.2d 117 (La.App. 2d Cir.1992); Levy v. Cummings, 25475 (La.App.2d Cir. 1/19/94), 631 So.2d 55; Armstrong v. Rabito, 95-0659 (La.App. 4th Cir. 10/26/95), 663 So.2d 512; Pellegrini v. Crellin, 95-2654 (La.App. 4th Cir. 5/8/96), 674 So.2d 463; D'Abreu v. Diesel Power International, Inc., 625 So.2d 540 (La. App. 5th Cir.1993). Furthermore, even if that section were applicable, plaintiff did not carry her burden of proving that the insurer's actions were arbitrary, capricious, or without probable cause as required by it or by the provisions of La.R.S. 22:658.
In the instant case, the jury found that the defendant insurer, State Farm, had not violated its duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims. Such a finding is not manifestly erroneous. Even though we disagree with the percentages of fault assessed by State Farm, we find that the insurer conducted a thorough investigation. The adjuster assigned to the case obtained the police report and statements from the drivers. The facts of the accident were disputed, and there were no witnesses. (In his attempt to obtain so much information as possible, the adjuster even attempted to contact the drivers in another accident at the same intersection which occurred at about the same time.) According to the adjuster, Mrs. Ware was consistent and clear in her statements while the plaintiff was not. To Mrs. Ware's credit, he considered the fact that she was sufficiently attentive to take evasive actions which nearly avoided the collision. The adjuster also procured medical bills concerning the plaintiff's injuries, and he tried unsuccessfully to obtain information from her employer as to her lost wages. Based upon the information he gathered, the adjuster concluded that the plaintiff was 50 percent at fault and made his settlement offers accordingly. He made an initial offer of $1,620 to the plaintiff for the property damage. Ultimately, State Farm paid her $750, or 50 percent of $1,500. The adjuster also offered the plaintiff $5,000 to settle her claim for bodily injury; he based this offer on 50 percent of the value of her injury claim and 50 percent of her medical bills to that date.
Based on the foregoing, we affirm the portion of the judgment denying penalties and attorney fees to the plaintiff.

CONCLUSION
We amend the judgment of the trial court to reduce the amount of comparative fault assessed against the plaintiff from 40 percent to 20 percent. We further amend the judgment to increase the plaintiff's property damage from $1,250 to $2,041 and her recovery for lost wages from $840 to $1,680. In all other respects, the judgment of the trial court is affirmed. Costs are assessed to the defendants.
Accordingly, the trial court judgment is recast as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein as follows:

DEGREE OF FAULT OR NEGLIGENCE
ATTRIBUTABLE TO
DONNA SUE RAMIREZ 20%
DEGREE OF FAULT OR NEGLIGENCE
ATTRIBUTABLE TO
MARY WARE AND STATE FARM
MUTUAL AUTOMOBILE
INSURANCE COMPANY 80%

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, DONNA SUE RAMIREZ, and against the defendants, MARY WARE and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, subject to the degree of fault set forth above, as follows:

PROPERTY DAMAGE $ 2,041.00
PAST MEDICAL EXPENSES 4,727.77
PAST LOST EARNINGS 1,680.00
PAST, PRESENT AND FUTURE
PHYSICAL AND MENTAL
PAIN AND SUFFERING 5,000.00
LOSS OF EARNING CAPACITY -0-
 __________
TOTAL: $13,448.77

Said Judgment is subject to a credit in the amount of $750.00, representing previous payments to plaintiff by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
*1309 AMENDED, AND, AS AMENDED, AFFIRMED.
NOTES
[1] While Mr. Frisch testified that his estimator found $800 in old damage on the plaintiff's car, he testified that he felt that a deduction of only $300 would be more appropriate.