756 So.2d 549 (2000)
Cathy C. MORRIS, Plaintiff-Appellant,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, et al., Defendants-Appellees.
No. 32,528-CA.
Court of Appeal of Louisiana, Second Circuit.
February 18, 2000.
Rehearing Denied March 30, 2000.
*553 Blackwell, Chambliss, Henry, Caldwell & Cagle by W. Mark McKee, West Monroe, Counsel for Plaintiff-Appellant.
Theus, Grisham, Davis & Leigh by Phillip D. Myers, Monroe, Hudson, Potts & Bernstein by Jay P. Adams, Monroe, Counsel for Defendants-Appellees.
Before NORRIS, C.J., and BROWN and CARAWAY, JJ.
NORRIS, Chief Judge.
Following a motor vehicle accident wherein she suffered personal injuries, Cathy Morris brought a negligence suit (No. 32,528-CA) against John Rivoire, driver of the vehicle which struck her. Rivoire subsequently *554 filed a separate suit (No. 32,529-CA) against the dealer which sold him the vehicle, alleging that the cause of the accident was the failure of his vehicle's antilock brake system. After those two suits were consolidated by the court, Rivoire joined GM, the vehicle's manufacturer, as a third-party defendant based upon the theories of products liability and failure to warn. In a third suit which was ultimately consolidated with the other two (No. 32,530-CA), GMAC sued Rivoire to recover the amount due on the vehicle financing agreement. In response, Rivoire filed a reconventional demand in redhibition, seeking rescission of the sale. After a bifurcated trial where the jury attributed 100% fault to Rivoire and rendered verdicts in favor of GM on the products liability claim, the district court rendered judgment in favor of GMAC, and dismissed Rivoire's redhibition claim. Morris appeals the amount of her award for general damages, as well as the lack of future medical expenses. Rivoire appeals each of the judgments against him in Nos. 32,529 and 32,530-CA. Because the issues are factually interrelated, we have recounted the facts common to all three cases in the instant opinion. For the reasons expressed below, we affirm No. 32,528-CA. Separate judgments are rendered in No. 32,529-CA and No. 32,530-CA.

Facts
On March 10, 1995, during heavy lunch-time traffic, John Rivoire was traveling northbound on U.S. Highway 165 in Monroe, Louisiana in his 1994 GMC Suburban behind Cathy Morris in her 1991 GMC Jimmy. When traffic conditions required Morris to slow and stop at the intersection of Highway 165 and Claiborne, Rivoire's Suburban collided with the rear end of Morris' Jimmy. The vehicles suffered minor damage. At the time of the accident, as well as throughout this litigation, Rivoire claimed that the accident was caused by brake failure.
At trial, Rivoire testified that he had stopped at a red light near the intersection where the accident occurred. The light changed, and all the cars moved forward, but because a car ahead of him could not make a left turn due to traffic, the cars in Rivoire's lane began to apply their brakes. He testified that he was traveling approximately 20 m.p.h. and as he applied his brakes, he heard a "groaning" sound emanating from the vehicle. According to Rivoire, the vehicle immediately quit decelerating and his brake pedal went all the way to the floor. When he removed his foot and reapplied pressure to the brake pedal, it still failed to respond. He then attempted to down-shift his transmission to stop the vehicle, but he struck Morris nevertheless. Morris testified that Rivoire's vehicle appeared to be rolling forward at a constant rate of speed, and she saw no evidence of deceleration prior to the collision. The investigating police officer did not issue a citation to Rivoire, attributing the accident to brake failure.
Rivoire also testified that prior to the accident, he had a similar experience while driving the vehicle in February, 1995. He testified that he heard the same "groaning" noise from his vehicle immediately preceding a similar brake failure while crossing railroad tracks at approximately 25 m.p.h. Following that incident, he took the vehicle to Cooper Buick GMC, but was told by Cooper employees in the service and sales departments that his ABS system must have been activated as he crossed the railroad tracks and that all he needed to do to correct this was to not pump his brakes. They explained that the "groaning" noise meant that the ABS system had been activated. Cooper did not otherwise inspect or repair his brake system at that time. Although Rivoire admitted that he could not reproduce the incident when he deliberately tried to do so, his accident with Morris occurred less than a month later.
In the collision, Morris suffered injuries to her temporomandibular joint (TMJ) and aggravation of a preexisting arthritic cervical spine condition. She also suffered *555 a rib fracture, which led to a pneumonia. For her back and neck pain, she was treated conservatively by a number of doctors from March 10, 1995 to August 1995. By December 1995, Dr. Kenneth Sullivan, Morris' treating physician, testified that Morris had a good prognosis as of that date, noting that she reported no major physical problems and that her pain had much improved.
To treat Morris' TMJ injuries, which were diagnosed as "mild stage 2 TMJ" by Dr. Louis King Scott, her treating dentist, she wore a splint from November 1995 to January 1996. The splint was worn in order to reduce stress in Morris' jaw. Morris also received anti-inflammatory medication and physical therapy in the course of her treatment. By February 20, 1996, according to Scott, further use of the splint was unnecessary because her condition had improved. Scott also testified that Morris did not complain of any further TMJ symptoms on a later teeth cleaning visit in May 1996.
Following the accident, Morris filed a negligence action against Rivoire and his insurer, USAA. Rivoire subsequently filed a separate suit against Cooper Buick GMC Truck, alleging that the cause of the accident was the failure of the antilock brake system in his Suburban. He also sought rescission of the sale under a theory of redhibition. Those lawsuits were consolidated, and Rivoire added General Motors as a third-party defendant in the Morris suit based upon the theories of products liability, negligence, and failure to warn. Morris likewise amended her original petition, adding GM as a defendant. In a third suit which was ultimately consolidated with the other two, GMAC, who financed Rivoire's vehicle, sued to recover the amount due on the vehicle financing agreement. In response, Rivoire filed a reconventional demand, asserting that the sale should be rescinded due to a redhibitory defect in the vehicle at the time of sale.
Following a five day bifurcated trial, the jury rendered a verdict in favor of Morris, finding Rivoire 100% at fault, and awarding Morris damages totaling $43,933.46, which included $25,000.00 general damages, $17,191.31 past medical expenses, and $1,742.15 past lost wages. The jury also rendered judgment in favor of GM, rejecting Morris' and Rivoire's products liability claims. Following the jury verdict, the district court rendered judgment in favor of GMAC for the unpaid balance due on Rivoire's financing agreement and dismissed Rivoire's redhibition claim.
Subsequently, Morris filed a motion for JNOV, or in the alternative, additur or a new trial. The court denied her motions. Morris appeals solely the award of damages, claiming that the damages awarded by the jury were insufficient and that the jury neglected to award her future medical expenses. Rivoire appeals each of the judgments against him.

Quantum of Morris' Damages
Morris challenges the jury's decision to award her $25,000.00 in general damages and no future medical expenses. She contends that this amount inadequately compensates her for all her injuries and neglects her future need for medical care.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App.2d Cir. 9/25/96), 680 So.2d 1333, writs denied, 96-2592, 96-2599 (La.12/13/96), 692 So.2d 376, 1063. A jury has much discretion in the assessment of damages in tort cases. La.C.C. art. 2324.1. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when an award is, in either direction, beyond that which a reasonable *556 trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that an appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
If an articulated analysis of the facts discloses such an abuse of discretion, then examination of prior awards in similar cases is proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Dixon v. Tillman, 29,483 (La.App.2d Cir. 5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174; Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). Whether an award is excessive depends upon whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Manuel v. State Farm Mut. Auto Co., 30,765 (La.App.2d Cir. 8/19/98), 717 So.2d 277.
A victim is entitled to compensation for an aggravation of a preexisting condition or injury. Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.), writ denied, 580 So.2d 923 (1991). Where a defendant's negligent action aggravates a preexisting injury, he must compensate the victim for the full extent of the aggravation. Cook v. Wal-Mart Stores, Inc., 540 So.2d 1017 (La.App. 2d Cir.1989). The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering. Tobin, supra.
After reviewing the record, we conclude that the jury did not abuse its broad discretion in awarding $25,000.00 for general damages. Morris' treating physicians concurred in their testimony that prior to the accident, Morris suffered from preexisting degenerative disc disease at C4 and C5 with spurring and degenerative disc disease in the thoracic and dorsal spine. Shortly after the accident, a CT scan showed no significant disc protrusions or bone spurs. She was successfully treated conservatively with medication to the point that by the end of 1995, Morris reported no major physical problems and that her cervical pain was much improved. In sum, while it is true Morris' condition was aggravated by the accident, the testimony of her treating physicians established that she would nevertheless continue to experience pain from her preexisting degenerative disc disease and that the aggravating symptoms caused by the accident had been treated successfully within ten months of the accident.
Likewise, Morris' TMJ injury was successfully treated conservatively in a matter of months with no residual symptoms. Facially, the award is sufficiently reasonable as not to require an examination of similar awards in similar cases. However, our examination of recent awards for analogous injuries strengthens our conclusion that the award is not inadequate and was not an abuse of the jury's discretion. For example, in Odom v. Claiborne Electric, 623 So.2d 217 (La.App. 2d Cir.1993), this court affirmed a general damages award of $18,500.00 for aggravation of preexisting degenerative disc disease. Similarly, in Breaux v. Wal-Mart, 635 So.2d 667 (La. App. 3d Cir.1994), the Third Circuit awarded $7,500.00 in general damages to a plaintiff who sustained damages to her neck and back, along with a TMJ injury which caused recurrent headaches for four months, with treatment requiring four months of splint therapy and the installation of dental braces. See also Barillas v. Carrion, 96-746 (La.App. 5th Cir. 3/25/97), 692 So.2d 1217 (award of $11,000 upheld for plaintiff suffering six years with cervical *557 injuries as well as headaches and residual TMJ disorder).
Morris also claims that the jury unreasonably failed to award her future medical expenses. In support, she cites the initial diagnosis of orthopedic surgeon Dr. Myron Bailey, who opined that surgery may be necessary in the future. Although Dr. Bailey initially opined that Morris may need future surgery, he revised his opinion after a subsequent surgical consultation with a neurosurgeon, Dr. Davis, who indicated that surgery would not be advisable in light of Morris' condition. At trial, no other evidence was presented as to the probable necessity of future surgery, its anticipated costs, or even the palliative effects of any future proposed course of treatment.
Future medical expenses must be established with some degree of certainty, and an award of such cannot be predicted on mere speculation. Holt v. State, 28,183 (La.App. 2d Cir.4/3/96), 671 So.2d 1164 (La.App.2d Cir.1996), writ denied, 96-1132 (La.6/21/96), 675 So.2d 1080. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable costs. Holt, supra; Kessler v. Southmark Corp., 25,941 (La.App.2d Cir. 9/21/94), 643 So.2d 345. Based on the evidence presented by Morris at trial, her future need for medical expenses, although possible, is not reasonably certain to occur in the future. As such, the jury's decision not to award her future medical expenses comports with the law and evidence presented, and is therefore not plainly wrong. Stobart v. State, 617 So.2d 880 (La.1993). We cannot, therefore, set aside such a finding of fact in the absence of clear or manifest error.

Products Liability Claims
The Louisiana Products Liability Act ("LPLA") establishes that the manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant. La. R.S. 9:2800.54 A. A product may be deemed unreasonably dangerous due to its composition or construction, or its design, and a manufacturer may be also liable for failing to provide an adequate warning. La.R.S. 9:2800.54 B. A claimant seeking recovery under the LPLA bears the burden of proving the existence of an alleged defect. La.R.S. 9:2800.54 D.
Initially, a claimant must prove that his damages arose from a reasonably anticipated use of the product. La. R.S. 9:2800.53(7). In the present case, obviously, Rivoire's vehicle was being used as anticipated on the date of the accident. What remains, however, is whether he met his evidentiary burden as delineated by the LPLA.
In a products liability action, whether a defect is unreasonably dangerous in design or composition is a question of fact. Hines v. Remington Arms Co., 94-0455 (La.12/8/94), 648 So.2d 331; Taylor v. American Laundry Mach., Inc., 27,121 (La.App.2d Cir. 6/23/95), 658 So.2d 288, writ denied, 95-1877 (La.11/3/95), 661 So.2d 1385. The factual findings of a factfinder will not be disturbed absent manifest error. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326; Rosell v. ESCO, 549 So.2d 840 (La. 1989). When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court on review should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact. Powell, supra, citing Canter v. Koehring Co., 283 So.2d 716 (La.1973). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous *558 or clearly wrong. Rosell v. ESCO, supra.
In the instant case, Rivoire alleged that GM is liable under the LPLA because the vehicle's ABS system was unreasonably dangerous in construction or composition and/or unreasonably dangerous in design and that GM failed to warn him of the defect. The district court granted a directed verdict on Rivoire's design defect claim under La.R.S. 9:2800.56 and Rivoire has not appealed that verdict; that claim is therefore deemed abandoned. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657. Rivoire, however, has challenged the jury's finding of no defect in the vehicle under La.R.S. 9:2800.55.
La. R.S. 9:2800.55 provides that a product is unreasonably dangerous in construction or composition if, "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." It is incumbent, therefore, for a claimant under this section to demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous." See, e.g., Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L.REV. 565, 593 (1989); Gallagan, The Louisiana Products Liability Act: Making Sense of It All, 49 LA. L.REV 629, 648 (1989).
Rivoire's expert, Sylvanus Walker, a licensed mechanical engineer who had never designed an ABS system or had any training or coursework in ABS systems, opined that a defect existed in the capacity of the high pressure pump and reservoir because they are insufficient to support an ABS system. He admitted, however, that he did not perform any testing to determine what the capacity of the high pressure pump was on this particular system, nor did he advance any opinion as to how the pump in Rivoire's vehicle materially deviated from GM's design specifications or performance standards. Similarly, Walker opined that assuming Rivoire's account of events was true, then the loss of braking had to be attributable to an ABS system failure; he was, however, unable to offer an explanation or theory as to which component of the system actually failed, or how its failure would account for the complete loss of braking power. As such, Rivoire failed to establish a defect in composition or construction under R.S. 9:2800.55 since we cannot infer the existence of such a defect within the meaning of the LPLA based solely on the fact that an accident occurred. Ashley v. General Motors Corp., supra, 666 So.2d 1320 at 1322 (La.App. 2nd 1996); Jaeger v. Automotive Cas. Ins. Co., 95-2448 (La.App.4th Cir. 10/9/96), 682 So.2d 292. Accordingly, the jury's finding of no defect within the contemplation of the LPLA was a reasonable conclusion in light of the applicable law and the evidence presented; therefore it is not manifestly erroneous.[1]

Allocation of Fault
Rivoire and his insurer, USAA, contend that the jury erred in assigning 100% of the fault to him. Rivoire argues that his accident with Ms. Morris was not caused by any negligence or unreasonable conduct on his part, but was the result of external circumstances sufficient to discharge him from responsibility for the accident, particularly the failure of his vehicle's ABS system. As such, he claims that the jury erred by assigning 0% fault to GM, the vehicle's manufacturer.
*559 Allocation of fault is a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/05/94), 640 So.2d 1305; Ramirez v. Ware, 28,879 (La.App.2d Cir.9/25/96), 680 So.2d 1302. A court of appeal may not set aside a jury's findings of fact in the absence of clear or manifest error. Stobart v. State, 617 So.2d 880 (La.1993); Rosell v. ESCO, supra.
Delictual responsibility in Louisiana is based on fault. La.C.C. Art. 2315.[2] Fault is a more comprehensive term than negligence, and fault encompasses many acts which are not morally wrong, but are merely violative of laws or of legal duties. Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971).
Rivoire had a duty to keep his vehicle under proper control. A following motorist in a rear-end collision is presumed to have breached this duty and is presumed negligent absent compelling rebuttal evidence proving otherwise. Boggs v. Voss, 31,965 (La.App.2d Cir. 6/16/99), 741 So.2d 139; Mart v. Hill, 505 So.2d 1120 (La.1987); Chambers v. Graybiel, 25,840 (La.App.2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. In the present case, Morris proved that her damages were proximately caused by Rivoire's inability to maintain proper control of his vehicle. Rivoire freely admitted that his vehicle was unable to stop because of what he believed to be a defect in his braking system, something he had suspected for at least a month. Morris thus established her own freedom from fault and a prima facie case of fault on Rivoire's part.
In addition, the jury specifically found Rivoire negligent in interrogatory 3 as well as strictly liable in interrogatory 4.[3] To support these conclusions, the jury was presented with contested testimony suggesting that the accident was caused by Rivoire's failure to timely apply his brakes, as well as testimony suggesting that the accident was attributable to a defect in Rivoire's vehicle. The jury also specifically rejected, in interrogatories 2 and 3, the products liability claims, finding insufficient proof of a defect cognizable under the LPLA.[4]
In fact, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra; Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong but whether the fact finder's conclusion was a reasonable one in light of the record evidence. Theriot supra; Stobart, 617 So.2d at 882-883. In the present case, the jury's findings are supported in the *560 record and therefore cannot be manifestly erroneous. As such, this assignment of error has no merit.

Inconsistent Jury Interrogatories
Rivoire also contends that the jury's responses to the interrogatories created irreconcilably inconsistent and conflicting results. Specifically, he claims that when the jury attributed "strict liability" to him in its answer to Interrogatory 4, this necessarily entailed a finding that a defect existed in his vehicle. This is because strict liability is attributable under the Civil Code pursuant to La.C.C. Art. 2317[5] and 2317.1[6]. This, he contends, does not comport with the jury's answer to interrogatories 2 and 3 which specifically found no defect attributable to GM. under the LPLA.
La.C.C.P. Art. 1813 E provides that:
When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial.
A party claiming an inconsistency in the jury's verdict must first raise the issue at trial; otherwise any objections are waived. La.C.C.P. art. 1793, 1812; Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App.2d Cir.6/26/96), 677 So.2d 568, 574; Metz v. Howard, 93-726 (La.App. 5th Cir. 1/25/94), 631 So.2d 1248, 1250-51. This is because the trial court has the ability to take immediate remedial action by sending the jury back for further deliberations or ordering a new trial. Metz, supra; Johnson v. Terrebonne Parish Sheriff's Office, 95-1180 (La.App. 1st Cir. 2/23/96), 669 So.2d 577. Since Rivoire did not raise this issue in the district court or file a motion for JNOV, he cannot raise it for the first time on appeal. Moreover, we are not convinced that the answers to the interrogatories are inconsistent, as Rivoire suggests. Although the finding of strict liability would suggest a specific finding of a defect in the vehicle, the jury charge (which was also not objected to) did not clearly define the legal terms "strict liability" or "defect" or otherwise relate these concepts to art. 2317; as such, the jury could easily have equated "strict liability" with "sole liability." Moreover, the jury could have reasonably found a "defect" in the vehicle at the time of the accident but not at the time of purchase, as required by the LPLA. Accordingly, this assignment of error lacks merit.

Rivoire's Redhibition Claim Pursuant to La.C.C. art. 2520
Redhibition is the avoidance of a sale on account of some vice or defect in the item sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La.C.C. art. 2520. To obtain rescission of the sale, the plaintiff must prove: 1) the seller sold the item to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, *561 judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the item contained a non-apparent defect at the time of sale; and 3) the seller was given an opportunity to repair the defect. Crow v. Laurie, 98 0648 (La.App. 1st Cir. 2/29/99), 729 So.2d 703, 705; Watkins v. Freeway Motors, 29,385 (La.App.2d Cir. 4/2/97), 691 So.2d 854, 857; Carroll v. Coleman, 27,861 (La.App.2d Cir.1/24/96), 666 So.2d 1264; Dupree-Simpson Farms v. Helena Chemical Co., 28,739 (La.App.2d Cir.10/30/96), 682 So.2d 838, 842; Fly v. Allstar Ford Lincoln Mercury, Inc., 95 1216 (La.App. 1st Cir. 8/21/96), 690 So.2d 759, 761. A defect is also redhibitory when, without rendering the thing totally useless, it diminishes the item's value to the extent that the buyer would still have bought it, but for a lesser price. La. C.C. Art.2520; La.C.C. Art. 2541.
A manufacturer is presumed to know the defects in its products and thus is liable to the buyer for all damages caused by the defect under Article 2545. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980) (on rehearing); Rey v. Cuccia, 298 So.2d 840 (La.1974); Hostetler v. W. Gray & Co., Inc., supra. A manufacturer's presumed knowledge of a defect, however, is not imputed to a mere seller. Holloway v. Gulf Motors, Inc., 588 So.2d 1322, 1326 (La.App. 2d Cir.1991). A seller who knows but omits to declare the vice of the thing he sells is answerable to the buyer not only for restitution of the purchase price and repayment of expenses, including reasonable attorney fees, but also for damages. La.C.C. Art. 2545; Hostetler v. W. Gray & Co., Inc., 523 So.2d 1359 (La.App. 2d Cir.1988).
In a redhibition case, the buyer has the burden of proving the existence of a redhibitory defect by a preponderance of the evidence. Jordan v. Security Co., 425 So.2d 333 (La.App. 3d Cir.1982); Beth Israel v. Bartley, Inc., 579 So.2d 1066 (La. App. 4th Cir.), writ denied, 587 So.2d 696 (1991). Proof of a redhibitory defect may be by direct or circumstantial evidence which gives rise to a reasonable inference that the defect existed. Rey v. Cuccia, 298 So.2d 840, 843 (La.1974); Boos v. Benson Jeep-Eagle Co., Inc., 98-1424 (La.App.4th Cir. 6/24/98), 717 So.2d 661, writ denied, 98-2008(10/30/98), 728 So.2d 387; Dixie Roofing Co. of Pineville, Inc. v. Allen Parish School Board, 95-1526 (La.App. 3d Cir.5/8/96), 690 So.2d 49, writs denied, 96-2084, 96-2100 (11/8/96), 683 So.2d 276, 683 So.2d 277; American Manu. Mut. Ins. Co. v. General Motors Corp., 582 So.2d 934 (La.App. 2d Cir.1991); Beth Israel, supra. The evidentiary burden is that the proof must be more probable than not. The buyer need not prove the underlying cause of the defect, but only that it existed. In other words, unlike a claim asserted pursuant to the LPLA, the buyer can show that the product was defective without being required to prove the exact or underlying cause for its malfunction. Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1126 (La.1992); Rey v. Cuccia, supra; Casablanca Convertors, Inc. v. Morning Paper, Inc., 627 So.2d 699, 700, (La.App. 3d Cir. 1993), rev'd on other grounds, 635 So.2d 1102 (1994); Ezell v. General Motors Corp., 446 So.2d 954 (La.App. 3d Cir.), writ denied, 449 So.2d 1350 (1984).
The LPLA is the exclusive form of recovery against a manufacturer only for those damages as defined by the Act; the Act does not preclude recovery from a manufacturer for damages for economic loss due in a redhibition claim. Draten v. Winn Dixie of Louisiana, Inc., 94 0767 (La.App. 1st Cir. 3/3/95), 652 So.2d 675, 678; Monk v. Scott Truck & Tractor, 619 So.2d 890, 893 (La.App. 3d Cir.1993). The LPLA defines "damage" as follows:
"Damage" means all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery. "Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent *562 that Section 3 of Chapter 6 of Title VII of Book III of the Civil Code, entitled `Of the Vices of the Thing Sold,' does not allow recovery for such damage or economic loss. Attorneys' fees are not recoverable under this Chapter.
La.R.S. 9:2800.53(5).
Thus, although "redhibition is not available as a theory of recovery for personal injury," it is "still viable against the manufacturer to recover pecuniary loss." Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1251 (5th Cir.1997); Borskey v. Medtronics, 1998 WL 122602, *4 (E.D.La. Mar 18, 1998).
In the present case, the district court held a hearing on Rivoire's redhibition claim following the conclusion of the jury trial. Although the district court commented that something may have been "wrong" with the vehicle, he nevertheless concluded that Rivoire failed to prove his case.
In viewing the record before us, we conclude that Rivoire, solely through personal observation and circumstantial evidence, presented his version of events-a "groaning" sound emanating from his vehicle accompanied by the onset of brake failure. As in his LPLA claim, however, Rivoire was unable to pinpoint the mechanical cause of the presumed brake failure or even offer a reasonable explanation for it. In support of his version of events, Rivoire also presented testimony from Mike Creighton, Lewis Lyles, and Frank Nettles outlining analogous brake failures in similar vehicles. Each offered similar accounts of hearing a groaning noise which preceded a loss of braking power, but as in Rivoire's case, the exact mechanical cause of each brake failure was undiscoverable. Sylvanus Walker, Rivoire's expert witness, testified that an ABS system when working as designed should allow a vehicle to maintain a positive braking force with the brakes applied and if the accident occurred as described by Rivoire, then the only possible cause would have to be a failure of the ABS system.
In contrast, at trial, Roy Holloway, director of parts and service at Cooper Buick GMC Truck, testified that Rivoire's vehicle had an unusually high number of ABS activations in relation to ignition cycles, which suggested Rivoire drove the vehicle aggressively. Holloway also testified that his post-accident inspection of the vehicle revealed low brake fluid levels, which could potentially result in decreased stopping ability, but not total brake failure. Although he testified that an activated ABS makes a "groaning" sound similar to that described by Rivoire, he further noted that ABS systems typically do not activate during slow speed (15-20 m.p.h.) stops on a dry road as in the present accident. He also noted that the brakes of Rivoire's vehicle had not been serviced or otherwise modified prior to the accident, and that a post-accident inspection revealed no brake defects. In addition, Holloway detailed his post-accident inspection with Joe McCreary, a GM zone representative. Holloway and McCreary road tested the vehicle and could not duplicate a brake failure as described by Rivoire. McCreary also conducted a detailed computer diagnostic analysis of the vehicle's ABS system, which yielded no irregularities. Mr. Bruce Bowman, a GM engineer who holds a master's degree in mechanical engineering from Stanford University and is experienced in the design and testing of ABS systems, testified that he could not duplicate the accident under the conditions reported by Rivoire.
As noted, it is well-settled that "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra; Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong but whether the fact finder's conclusion was a reasonable one in light of the record evidence. *563 Theriot supra; Stobart, 617 So.2d at 882-883.
The Louisiana Supreme Court has recognized that "[t]he reason for this wellsettled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Stobart, supra; Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Under these established principles and the record shown, we cannot view the district court's denial of Rivoire's redhibition claim as "clearly erroneous." The district court was presented with two divergent, yet reasonable views of the evidence and chose to reject Rivoire's version of events. As such, this assignment of error has no merit.

Conclusion
For the reasons expressed, the award to plaintiff Cathy Morris of $25,000 in general damages is AFFIRMED. Costs of this appeal are assessed to Cathy Morris.
AFFIRMED.
BROWN, J., concurs with written reasons.
BROWN, J., concurring.
This is simply a manifest error case. The jury found that the accident was caused by the negligence of Rivoire, not because of the failure of the ABS system. If the jury had found that the accident occurred because of a loss of braking power, then the circumstances would have established a defect in composition or construction. See Jurls v. Ford Motor Company, 32,125 (La.App.2d Cir.01/06/00), 752 So.2d 260.
There was evidence to support both views. Thus, we cannot say the jury's verdict or judge's decision on Rivoire's redhibition claim was clearly wrong or manifestly erroneous.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, WILLIAMS, CARAWAY, and DREW, JJ.
Rehearing denied.
NOTES
[1] Since the jury, within its discretion, reasonably found that no defect, as defined by the LPLA existed, we pretermit any consideration of Rivoire's contention that the jury erred by not finding that GM failed to warn him of any such defect.
[2] La.Civ.Code art. 2315 provides in pertinent part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
[3] We also note that the jury was erroneously instructed as to Art. 2317.1. This is because Art. 2317.1 was enacted after the date of the accident. We have previously found this statute to be a substantive change in the law of strict liability. Jackson v. Beasley, 30,359 (La. App.2d Cir. 4/8/98), 712 So.2d 162, 166; see also Small v. Baloise Ins. Co., 96-2484 (La. App. 4th Cir. 3/18/98) 753 So.2d 234, writ denied, 98-1345 (La.7/2/98), 724 So.2d 733. In the absence of explicit statutory language expressing otherwise, substantive changes in the law cannot apply retroactively to conduct predating the statute's enactment. Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86. We find this error harmless, however, because neither party objected to its inclusion in the jury charges at trial, nor has it been addressed on appeal. We therefore decline to further address this issue.
[4] Rivoire also claims that when the jury, in interrogatory 4, found him strictly liable, they made a necessary finding that a defect existed in the vehicle, and therefore its conclusion, in interrogatory 2 that no defect existed was in error. Notwithstanding that Rivoire simply failed to meet his burden under the LPLA, that claim is addressed elsewhere in this opinion.
[5] Art. 2317. Acts of others and of things in custody

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
[6] Art. 2317.1. Damage caused by ruin, vice, or defect in things

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.