| T DREW, Judge.
From a city court judgment in favor of the plaintiff, New South Communications, Inc. d/b/a The Radio People, KJLO & KLIP (New South) in the amount of $2,544.00 for unpaid advertising bills .and $350.00 for attorney’s fees, Phillip R. Wright d/b/a National Furniture Store (Wright d/b/a National) filed this appeal. For the following reasons, the judgment is affirmed.
FACTS
On May 15, 2000, New South filed a petition to collect on an open account and also sought attorney’s fees pursuant to La. R.S. 9:2781, showing that its radio stations had run advertisements for Wright d/b/a National for which National had not made payments in full. Wright d/b/a National answered the petition and contested the amount that New South sought to collect.
After considering all the evidence and testimony, the trial court determined that Marion Cornet, the general manager for National Furniture Store, was the agent for Phillip Wright, the owner of the store, for the purpose of obtaining advertisement. This finding is not contested on appeal. While acting as agent for Wright d/b/a National, Cornet entered into an agreement with New South for radio advertisement. The trial court found that Wright and Cornet had a mis-communication between themselves regarding the price of the advertisement. The trial court then stated that this alleged confusion between Wright and Cornet could not be a valid basis for refusing to pay for services rendered by New South. The trial |?court found in favor of New South for the full amount of the invoices and awarded $350.00 in attorneys fees pursuant to La. R.S. 9:2781.
At the trial, New South’s employee, Peggy Sullivan, testified that in April 1999 she initiated discussion of the advertising agreement with Cornet whom she met at the National Furniture Store. She made a proposal to run 120 thirty-second spots on KLIP for $1,920.00 and 120 weather spots for KJLO for an additional $1,920.00. At that time, there was a discussion that KJLO did not have thirty-second spots available, but if some were to become available they would be sold to National. Sullivan did not speak with Wright but Cornet did, via telephone, in Sullivan’s presence. Sullivan testified that Cornet read to Wright the information on the top of the ad schedule calendar she gave Cornet. Sullivan stated that Cornet related to Wright the information Sullivan gave him and then confirmed with Wright that the proposed advertising was acceptable.
Cornet testified that the amount he agreed to was about $2,000.00. When he and Sullivan had reached an agreement, *1105 Cornet called Wright and Wright agreed to the amount over the phone. The agreement was never reduced to writing. All Cornet could recall regarding the specifics of the agreement was that the final amount for the entire package totaled about $2,000.00.
Sullivan testified that she later met with Wright when she stopped by the store. According to Sullivan, Wright seemed pleased with the advertisements and they discussed additional advertisements. During the conversation, Wright told Sullivan that he was not aware that the agreed-to ^advertisements would cost $3,840.00. Sullivan testified that she and Wright continued to discuss various advertisement possibilities. It was after this conversation that the advertising was cancelled.
Cornet testified that a few days after this encounter, he spoke with Wright and Sullivan. He recalled that Sullivan was in Wright’s office and they were on a speaker phone and the three discussed some alternative advertising spots that would not adversely affect the price. Cornet could not recall an agreement to a certain amount of spots and the duration of each spot. He was certain that the final agreement would cost about $2,000.00.
Wright testified that he terminated the advertising agreement in mid-May, 1999, when he discovered that there were discrepancies in what had been agreed upon. Wright received an invoice for the spots that ran prior to his termination of the agreement. This invoice totaled $2,544.00. Wright declined to make any further payments until he received an invoice that he felt correctly reflected the agreement. Wright believed that based on his prior invoices and payments, the amount due should actually be $1,230.00.
The statement of accounts reflects that Wright was initially billed on March 31, 1999 for $343.00 for spots that ran on KJLO and for $160.00 for spots that ran on KLIP. Both of these amounts were' paid. It was shortly thereafter that Wright terminated the agreement. The spots immediately ceased running and Wright was billed for $1,264.00 for spots that ran on KJLO and $1,280.00 for spots that ran on KLIP for a total of $2,544.00. While Wright agrees that he owes some money for spots that ran, he contests that he owes those amounts.
LDISCUSSION
The question presented by Wright is whether the trial court erred in granting judgment in the full amount when the trial court found there was a mis-communication between the parties. However, Wright has incorrectly stated the finding of the trial court. Review of the trial court’s written reasons for judgment actually reflects that it found a mis-communi-cation between Wright and his agent, Cornet, and did not find a mis-communication between Wright and New South. The issue presented, then, is whether the record supports the trial court’s findings that Cornet, as agent for Wright, entered into a valid contract with New South.
The factual findings of a fact finder will not be disturbed absent manifest error. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326; Rosell v. ESCO, 549 So.2d 840 (La.1989). When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, the appellate court on review should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact. Powell, supra, citing Canter v. Koehring Co., 283 So.2d 716 (La.1973). Where there are two permissible views of the evidence, the fact finder’s choice be *1106 tween them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra; Morris v. United Services Automobile Association, 32,328 (La.App. 2 Cir. 2/18/00), 756 So.2d 549.
15A reasonable factual basis for the findings by the trial court exists in this record. New South’s employee, Peggy Sullivan, testified that she and Cornet agreed to advertising on two stations and the total would be $3,840.00. Although Sullivan’s testimony conflicted with that of Wright and Cornet, it is within the discretion of the trial court, as the finder of fact, to make a determination of whose testimony is more reliable.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840 at 844, 845 (La.1989).
The trial court’s decision to place higher credibility on Sullivan’s version of the events is not manifestly erroneous or clearly wrong. Sullivan’s testimony was not contradicted by any documents or objective evidence. Because the findings of the trial court are fully supported by the record, the judgment of the trial court is affirmed[1] at appellant’s costs.
DECREE
The judgment of the trial court is AFFIRMED.

. Although New South requested additional attorney’s fees in its appellate brief. New South neither appealed nor answered the appeal. La. C.C.P. art. 2133. Therefore, New South is not entitled to additional attorney's fees.