786 So.2d 269 (2001)
James G. McCULLIN and Jamie L. McCullin, Plaintiffs-Appellees,
v.
U.S. AGENCIES CASUALTY INSURANCE COMPANY and Joseph G. Jones, Defendants-Appellants.
No. 34,661-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*271 Hudson, Potts & Bernstein, L.L.P. by Brady D. King, II, Monroe, Counsel for Appellants.
Street & Street by C. Daniel Street, Monroe, Counsel for Appellees.
Before NORRIS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Joseph G. Jones and his automobile liability insurer, U.S. Agencies Casualty Insurance Company ("U.S. Agencies"), appeal from a judgment finding Mr. Jones 90 percent at fault in an automobile accident with Ms. Jamie L. McCullin and awarding Ms. McCullin $7,484.76 in damages. For the following reasons, the judgment of the trial court is affirmed.

FACTS
On September 19, 1997, Jamie McCullin was driving her father's, James McCullin's, pickup truck south on Highway 33 in Lincoln Parish, a road also known as the Farmerville Highway. Traveling behind Ms. McCullin was a Ford Explorer driven by Joseph Jones and occupied by a passenger, Andre Hatter. The highway is twolanes with a speed limit of 55 miles per hour.[1] Ms. McCullin estimated her speed as 55 miles per hour and Mr. Jones estimated his speed as 60 miles per hour. Ms. McCullin's route home from work required that she make a right turn off the Farmerville Highway onto Louisiana Highway 3072.
Ms. McCullin testified that, as she approached the intersection, she decided to roll up her window, but, in doing so, accidentally activated her left turn signal. Ms. McCullin stated that she let off the gas and switched the turn signal back to the right for her impending turn and then looked in her rear view mirror. In her mirror, she saw Mr. Jones' Explorer traveling on the shoulder. Ms. McCullin testified that she never left the southbound lane of travel. To avoid turning in front of Mr. Jones, Ms. McCullin said that she continued driving straight ahead, into the intersection; but, as she was going through the intersection, she heard tires squealing and then Mr. Jones' Explorer hit her from behind. She described the impact as "a fairly hard blow" and said that it knocked her truck's glove box door open. *272 Ms. McCullin also testified that the debris from the accident was in the southbound lane of travel in the intersection. Estimates to repair the damage to Mr. McCullin's truck totaled approximately $5,000.
Mr. Jones testified that he was about five to seven car lengths behind Ms. McCullin when he saw the truck's left blinker go on. In his deposition, Mr. Jones stated that Ms. McCullin's truck moved into the left (northbound) lane about two car lengths away from the intersection; he could not recall this distance at trial. Mr. Jones testified at trial that Ms. McCullin's truck was totally in the left (northbound) lane of travel for a period and that he accelerated to pass her on the right side when she moved back to the right (into the southbound lane), causing him to take evasive action and finally to hit her. Mr. Jones described the events leading up to the accident this way:
Well, I was behind her, following behind her and she put her left signal on to get into the left lane, so I slowed down to let her get over and she just got over and she got back over into the right lane. Well, as she proceeded to get in the right lane I tried to go around her to avoid the wreck. I don't know if she panicked or whatnot but she went back and I went back just like crossed back and forth.
After the accident, both vehicles came to a controlled stop.
Latanga Hayes, an acquaintance of Mr. Jones, was driving behind him at the time of the accident. At her deposition, Ms. Hayes stated that she had not seen the Explorer driven by Mr. Jones prior to the accident. According to Ms. Hayes' trial testimony, she was "about a car and a half or two" behind Mr. Jones and had been traveling behind him for several minutes. At trial, she testified:
The truck that was in front of [Mr. Jones] had gotten into the left hand lane to make a left hand turn and obviously they didn't know, either they realized it wasn't their turn or whatever, they came back into the road.... Joe went up on the right hand shoulder and all of a sudden the truckand the truck came on, too, because they probably realized he was behind. Then they both came back onto the road but Joe was trying to go around the truck stopped and he hit. By the time they realized (inaudible) he tried to go back over there and he made contact.
Ms. Hayes further testified that Ms. McCullin's truck moved completely into the northbound (left) lane of travel before reentering the southbound lane and that Mr. Jones accelerated to pass Ms. McCullin while she was in the northbound lane. Ms. Hayes stated that Ms. McCullin was in the left lane between 10 and 15 seconds and that she moved into that lane only two or three car lengths away from the intersection. Ms. Hayes also testified that Mr. Jones' Explorer "went up on two wheels" due to Mr. Jones' effort to control his truck just before the accident. According to Ms. Hayes, at the moment of impact, Ms. McCullin was in the middle of the road, i.e., half in the northbound lane and half in the southbound lane, and Mr. Jones was entirely in the southbound lane. Ms. Hayes stopped to check on the parties' condition. She testified that Ms. McCullin got out of the truck and "she said she was sorry, she was at fault." Finally, Ms. Hayes stated that she did not see any damage to the truck Ms. McCullin was driving.
Andre Hatter, Mr. Jones' passenger and Ms. Hayes' cousin, was deposed and his deposition was introduced into evidence. Mr. Hatter testified that Mr. Jones was giving him a ride to the bus station in Ruston so he could catch a 3:00 p.m. bus. *273 Mr. Hatter described the accident this way:
The Ford driver ... signal went on to go left. Joe slowed down and she wentgot up in the left lane to turn left and at the time when he let off the brakes, she come back over. He jammed brakes to try to go to the shoulder to keep from hitting her and she came over, hit and next thing you know ... I'm bleeding and she's like "It was my fault."
Mr. Hatter further stated that Ms. McCullin got completely over in the left (northbound) lane "in order to let us go on by or something," that her truck traveled in the left lane for 40 or 50 yards and that she was well across the intersection before moving back into the right (southbound) lane.
Lincoln Parish Sheriff's Deputy Keith Huffman responded to the accident scene. Deputy Huffman could not remember exactly where the accident debris fell, but observed that most of the debris was "in the southbound travel lane or maybe partially on the shoulder." There were apparently no photos taken of the accident scene. Deputy Huffman could not recall if Ms. McCullin said that she had drifted into the northbound lane while changing her turn signal.
Ms. McCullin testified that, after the accident, she went home to retrieve her suitcase and load her horse trailer in preparation for participating in a rodeo that evening. She stated that a few hours after the accident she began feeling soreness and tightness in her back, shoulder and neck areas. Ms. McCullin stated that she did not find this unusual in light of the accident and chose to participate in the rodeo where she rode a horse in barrel and pole racing events. That night, she took aspirin or Tylenol for her symptoms of "sore tightness all over, but mainly the upper back, neck and [left] shoulder area." Over the next few weeks, Ms. McCullin's neck and shoulder continued to hurt so she sought treatment from a chiropractor and, later, an orthopedist. Ms. McCullin said that the therapy provided some relief and that, by her last visit to the orthopedist, December 22, 1997, she was essentially well, but for the occasional "catch" when she moves her left arm. She testified that she did not miss work because of the accident, although she was somewhat restricted in the use of her left arm. Finally, Ms. McCullin testified that her left arm still "catches" sometimes when she raises it.
On January 13, 1998, Ms. McCullin and her father filed suit against Mr. Jones and U.S. Agencies. The matter went to a bench trial on December 20, 1999. In its reasons for judgment issued on February 16, 2000, the trial court found that Mr. Jones was exceeding the speed limit, that he failed to maintain a proper lookout and that he failed to maintain control of his car. The trial court assigned 90 percent of the fault for the accident to Mr. Jones for following too close and driving at an excessive rate of speed under the circumstances. Next, the trial court allocated 10 percent of the fault to Ms. McCullin, criticizing her for inadvertently activating her left-turn signal and misleading Mr. Jones, briefly, into believing that she was going to make a left turn. The trial court awarded Ms. McCullin $7,000 in general damages and $1,316.40 in special damages, reduced by 10 percent, the percentage of her fault. The trial court further awarded James G. McCullin $4,943.01, the amount of the estimate for the repair of the truck and another $1,612.93 for rental car expenses, each amount reduced by 10 percent. The trial court also assessed expert witness fees and court costs against Mr. Jones. Judgment was signed on April 10, 2000. From *274 that judgment, Mr. Jones and U.S. Agencies now appeal.

DISCUSSION
On appeal, Mr. Jones and his insurer urge both that the trial court erred in its apportionment of fault and that the award of $7,000 in general damages to Ms. McCullin was an abuse of discretion and should be reduced. We disagree in both respects.

Liability
Appellants argue that the trial court erred in apportioning only 10 percent of the fault to Ms. McCullin. They cite Mr. Jones' own testimony, and the testimony of Ms. Hayes and Mr. Hatter, that Ms. McCullin drifted into the left (northbound) lane and suddenly moved back to the right, cutting Mr. Jones off and forcing him onto the shoulder. To the contrary, Ms. McCullin cites her own testimony that she stayed entirely within her lane and the testimony of Deputy Huffman that the debris from the accident was within the southbound lane and on the right shoulder.
According to the principles of comparative fault set forth in La. C.C. art. 2323, a plaintiff whose negligence contributes to her own injuries for which she seeks damages shall have her claim reduced in proportion to her degree of fault. Gray v. Louisiana Downs, 585 So.2d 1238 (La.App. 2d Cir.1991). An allocation of fault is a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Ramirez v. Ware, 28,879 (La.App.2d Cir.9/25/96), 680 So.2d 1302.
It is well-settled that the trial court's findings of fact may not be set aside on appeal in the absence of manifest error or unless clearly wrong. Leal v. Dubois, 00-1285 (La.10/13/00), 769 So.2d 1182; Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the trial court, which is in a unique position to see and hear the witnesses as they testify. In re: A.J.F. Applying for Private Adoption, 00-0948 (La.6/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Leal, supra; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
The law requires that, except in certain situations, a driver operate his vehicle in the right lane of a two-lane highway. La. R.S. 32:71. The record contains conflicting testimony on whether or not Ms. McCullin complied with this rule. Assuming, arguendo, that Ms. McCullin did operate her vehicle in the left lane for a brief period, we, nevertheless, observe that the traffic laws do not permit a following motorist to pass a driver on the right-hand side except under certain circumstances. La. R.S. 32:73 provides, in part:
The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:
(1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to *275 the right side of the roadway until safely clear of the overtaken vehicle.
A following motorist may pass on the right when the leading motorist is making a left turn, but only when that maneuver may be made in safety. La. R.S. 32:74 provides, in part:
A. The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:
(1) When the vehicle overtaken is making or about to make a left turn....
B. The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main traveled portion of the highway.
In Jones v. Tidwell, 139 So.2d 57 (La.App. 2d Cir.1962), this court attributed no fault to a following motorist whose car was struck by an apparently left-turning auto that suddenly moved to the right as the following motorist passed on the right. In that case, the leading auto was stopped and had been stopped for one to two minutes before suddenly moving to the right. Such a situation is clearly different from the case sub judice where the autos were traveling at 55 miles per hour or greater just before the accident. In such a case, the rule of La. R.S. 32:81 comes into play. That statute provides, in pertinent part:
A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached this duty, and, hence, is presumed negligent. Mart v. Hill, 505 So.2d 1120 (La.1987). In addition to the duty to follow another vehicle at a reasonable and prudent distance, a motorist also has a duty to maintain a careful lookout, observe any obstructions present and exercise care to avoid them. Ly v. State Through Department of Public Safety and Corrections, 633 So.2d 197 (La.App. 1st Cir.1993), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835.
In order to avoid liability, a following motorist who rear-ends another vehicle must prove a lack of fault; he may do so by establishing that he had his vehicle under control, closely observed the lead vehicle and followed at a safe distance under the circumstances. Chambers v. Graybiel, 25,840 (La.App.2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. The following motorist may also avoid liability by proving that the driver of the lead vehicle negligently created a hazard which he could not reasonably avoid. Boggs v. Voss, 31,965 (La.App.2d Cir.6/16/99), 741 So.2d 139.
In allocating comparative fault, consideration must be directed toward the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. Some of the factors which may influence the degree of fault assigned in that assessment are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger; 2) how great a risk the conduct created; 3) the significance of what the actor sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985); Ramirez, supra; Gray v. *276 Louisiana Downs, supra; Underwood v. Dunbar, 628 So.2d 211 (La.App. 2d Cir. 1993), writ denied, 94-0026 (La.2/25/94), 632 So.2d 767. In the present case, the trial court found that Mr. Jones was following Ms. McCullin too closely; and, given the trial court's decision to credit Ms. McCullin's testimony, the record does not contradict this factual finding. Mr. Jones should have made sure of the path of the truck driven by Ms. McCullin before he attempted to pass her on the right side. See Myers v. Traders & General Insurance Co., 81 So.2d 130 (La.App. 2d Cir. 1955). We do not believe Mr. Jones' purpose to be one of great significance-to keep from having to slow down or stop because of Ms. McCullin's impending turn. In order to achieve this purpose, he chose to pass her on the right-hand side. Mr. Jones executed this maneuver with full awareness of the risk of passing on the right-hand shoulder of the highway. On the other hand, as previously stated, the trial court criticized Ms. McCullin for accidentally activating her left blinker and briefly misleading Mr. Jones into believing she was going to turn left. The trial court's consideration of Ms. McCullin's inadvertence is reflected in its assessing Ms. McCullin with 10 percent of the fault for the accident. We find no manifest error in the trial court's allocation of fault.

Damages
Mr. Jones next argues that the trial court's award of $7,000 to Ms. McCullin in general damages was excessive. In Hammock ex rel. Thompson v. Louisiana State University Medical Center in Shreveport, 34,086 (La.App.2d Cir.11/1/00), 772 So.2d 306, this court explained appellate review of awards for general damages:
The trial court has much discretion in the assessment of damages in tort cases. La. C.C. 2324.1. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. An appellate court may disturb a damage award only when the record clearly reveals that the trial court abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only after an articulated analysis of the facts discloses an abuse of discretion is examination of prior awards in similar cases proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Powell v. RTA, 96-0715 (La.6/18/97), 695 So.2d 1326; Dixon v. Tillman, 29,483 (La.App.2d Cir.5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Manuel v. State Farm Mut. Auto. Co., 30,765 (La. App.2d Cir.8/19/98), 717 So.2d 277.
Only after an appellate court decides, following an articulated analysis of the facts, that a general damage award is excessive should the court engage in a comparison of the award to awards in similar cases. Reck v. Stevens, 373 So.2d 498 (La.1979); Greene v. Fox Crossing, Inc., 32,774 (La. *277 App.2d Cir.3/1/00), 754 So.2d 339, writ denied, 00-0944 (La.5/26/00), 762 So.2d 1108.
Our review of the facts of the case sub judice does not reveal any articulable reason why the general damage award to Ms. McCullin was an abuse of the trial court's vast discretion. The trial testimony supports the conclusion that the impact of the accident was significant. Within hours of the accident, before participating in the rodeo, Ms. McCullin began experiencing soreness and tightness in her shoulder, upper back and neck. This discomfort continued until Ms. McCullin sought chiropractic treatment and, eventually, treatment from an orthopedist.
Dr. Robert Randina, the chiropractor who treated Ms. McCullin, testified that his initial examination of Ms. McCullin revealed muscle spasms and nerve irritation and inflammation in the lower cervical spine area. Further evaluation showed signs of inflammation of the soft issues and ligaments of that area, including a weakness in the musculature of the left deltoid, biceps and triceps. A review of x-rays revealed a general libo-scoliosis, which Dr. Randina defined as a tilting of the spine to the left (where it should be straight) because of excess pulling of the muscles in that direction. Dr. Randina treated Ms. McCullin using chiropractic adjustments, ice, muscle stimulation and traction therapy designed to relieve muscle irritation. According to Dr. Randina, by October 22, 1997, Ms. McCullin's condition had improved, but had not completely resolved.
On November 13, 1997, Ms. McCullin saw Dr. James L. Etheredge, an orthopedic surgeon. Dr. Etheredge concluded that Ms. McCullin had sustained a sprain to her neck and left shoulder. He gave her a cortisone injection, prescribed physical therapy and instructed her to sleep in a cervical collar. Approximately one month later, Ms. McCullin's condition was significantly improved. As the trial court noted, Ms. McCullin had, fortunately, for the most part, fully recovered from the injuries she sustained in the accident, except for the occasional pain in her left shoulder. As previously stated, she testified that, even as of the date of trial, her left shoulder sometimes "catches" when she raises her arm. On these facts, we cannot say that the trial court's quantification of the severity and duration of Ms. McCullin's injuries into an award of $7,000 was an abuse of discretion.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants, Joseph G. Jones and U.S. Agencies Casualty Insurance Company.
AFFIRMED.
NOTES
[1] Throughout the record and the parties' briefs, the southbound lane is sometimes referred to as the "right" lane and the northbound lane as the "left" lane. This is somewhat confusing because the highway is two lanes rather than four. For clarity, we have included both terms where appropriate.