840 So.2d 1257 (2003)
Bobby G. MORRIS, Plaintiff-Appellee,
v.
Angela L. FLORES, et al., Defendants-Appellants.
Angela Lucinda Flores, Plaintiff-Appellant,
v.
James McLamb, et al., Defendants-Appellees.
Nos. 36,932-CA, 36,933-CA.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2003.
*1258 Downer, Hammond & Wilhite, by Kevin W. Hammond, Timothy W. Wilhite, for Defendant-Appellant, Angela L. Flores.
Andrus & Doherty, by James P. Doherty, Jr., Opelousas, for Plaintiff-Appellee, Bobby G. Morris.
Rice & Kendig, by Marshall Carl Rice, William F. Kendig, Jr., Lunn, Irion, Salley, *1259 Carlisle & Gardner, by Richard B. King, Jr., Shreveport, for Defendants-Appellees, Illinois National Ins. Co. and American International South Ins. Co.
Cook, Yancey, King & Galloway, by James R. Sterritt, Edwin L. Blewer, Jr., Shreveport, for Defendants-Appellees Clarendon National Ins. Co., Caddo Parish Sheriff and James W. McLamb.
Before WILLIAMS, STEWART and GASKINS, JJ.
STEWART, J.
In this suit resulting from an automobile collision, the trial court determined that the accident was caused by the combined negligence of Angela Lucinda Flores, who was found to have been 20 percent at fault, and James McLamb, who was found to have been 80 percent at fault. The trial court awarded Flores $12,500 in general damages. Flores appeals the award of damages, which she contends is abusively low. In answer to the appeal, McLamb, along with his employer and insurer, the Caddo Parish Sheriff and Clarendon National Insurance Company respectively, asserts error in the trial court's allocation of fault. Upon review of the record, we find no error in the allocation of fault between McLamb and Flores. However, we find the trial court's award of general damages to Flores to be abusively low, and we now raise that award to $25,000, the lowest figure which could have been awarded under the circumstances.

FACTS
On July 2, 1999, shortly before 10:00 p.m., a three vehicle accident occurred in the southbound lanes of travel along a rural, unlit section of Louisiana Highway 1, a four-lane divided highway with a speed limit of 65 miles per hour. The three vehicles involved in the accident included a Chevrolet S-10 pickup truck which was driven by Angela Flores, a Ford Crown Victoria patrol car which was driven by James McLamb, a deputy with the Caddo Parish Sheriff's Office, and a Ford Crown Victoria taxicab which was driven by Bobby Morris.[1]
Flores, who was seven months pregnant, had left her home on La. Hwy. 1 to meet friends. She was driving a truck which belonged to a friend and which she had permission to drive. Flores first traveled north along the highway. However, she began experiencing automotive difficulties after about a mile of travel. According to Flores, the truck kept "flooding out" and slowing whenever she pressed the accelerator. She decided to head back in the direction of her home, so she turned the vehicle and headed south along the highway. As Flores turned, she entered the left lane of travel in the southbound lanes. Flores realized that the vehicle would not make it much further, so she attempted to pull off to the left into the grassy median separating the four lanes of the highway, rather than attempt to cross to the right shoulder and risk the vehicle stopping between the lanes of travel. At this point, she was driving 10 miles per hour. As she was maneuvering to get fully into the median, she was hit from the rear by McLamb.
McLamb, a deputy with the Caddo Parish Sheriff's Office, was traveling south along the highway and was about to get off duty for the evening. He heard over the radio that another officer had stopped a vehicle and that the stop might involve a rape suspect. McLamb decided to assist *1260 that officer, so he began driving at about 75 to 80 miles per hour. As he entered the four lane portion of La. Hwy. 1, he passed a vehicle and spotted another officer who had made a vehicular stop. McLamb testified that he let that officer know over the radio that he was available to assist if needed, and that he began slowing his speed in case he needed to turn around. McLamb saw a taxi ahead of him in the right lane. McLamb testified that he entered the left lane to go around the taxi and that he glanced over to the taxi because he thought he might recognize the driver. At that moment, McLamb collided into the rear of Flores' truck. McLamb never saw Flores' truck prior to impact and did not know what he hit until after the accident. The force of the impact caused both vehicles to flip over. McLamb's vehicle also spun around and hit Morris's taxi one or more times.
Bobby Morris, the driver of the taxi, was traveling south along the highway on his way to work. His speed was about 55 miles per hour. Morris testified that he was traveling in the left lane when he noticed McLamb's vehicle approaching "real fast" from the rear. Morris immediately moved over to the right lane. Morris saw Flores' truck exiting the left lane. He noticed the rear lights of the truck blink and believed this to be the hazard lights. He described the position of the truck as being at an angle, with the front portion off the road and the back portion at the yellow line. He further described the rear of the truck as being on the pavement but not on the highway, and he testified that it was not blocking the lane of travel. He believed he was two or three car lengths away from the truck when he noticed it. As McLamb's vehicle came up beside him, Morris tried to pull further to the right. He heard the impact of the collision between McLamb and Flores, but he did not see it occur. Morris's vehicle was hit by McLamb's vehicle as it spun upside down on the highway.
Claims were asserted against each of the parties involved in the accident and heard in a bench trial. In addition to the testimony of the parties, the trial court heard from other witnesses. Chrystal Livingood and Tiffanye Hebert were traveling together along La. Hwy. 1, and observed McLamb traveling at a high rate of speed along the highway prior to the accident. Neither saw the accident occur, but they did stop to offer assistance.
Sheila Hostnick, a deputy with the Caddo Parish Sheriff's Office, was called on direct examination by counsel for Bobby Morris. Hostnick was on patrol at the time of the accident and responded to the accident scene. Her testimony, which was based on her investigation of the accident and statements made by the parties at the time of the accident, largely corroborated the parties' version of events. When called to the stand again on behalf of the defense by the Caddo Parish Sheriff, Clarendon National Insurance Company, and McLamb, Hostnick recalled Flores stating at the time of the accident that she did not have permission to drive the truck and that she was warned that the truck had mechanical problems. However, there was nothing in the police reports to corroborate this remembrance on the part of Hostnick, and Hostnick had failed to recall this information in her earlier testimony when questioned about statements made by the parties. Expert testimony was also offered by the Caddo Parish Sheriff, Clarendon, and McLamb to show that Flores' truck was actually blocking part of the left lane of travel and that McLamb's speed was not in excess of the posted speed limit.
From the testimony, the trial court found that Flores entered the left southbound lane of travel after turning around *1261 due to mechanical problems, that she was only able to travel 10 miles per hour, and that she was traveling partially in the left lane and partially in the median. The trial court further found that Morris was traveling in the right southbound lane at about 55 miles per hour, and that McLamb approached in the left southbound lane of travel at about 65 to 70 miles per hour. The trial court concluded that as McLamb passed by Morris, he looked to his right to see if he recognized Morris, and "never saw Flores' vehicle until just before the impact." The trial court determined the accident to have been caused by the combined negligence of McLamb and Flores, whom he assigned with 80 percent and 20 percent of the fault respectively. The trial court awarded general damages to Morris, McLamb, and Flores in the amounts of $7,500, $10,000, and $12,500 respectively. Judgment was rendered on June 25, 2002, in accordance with the written findings and reasons for judgment.
Following the judgment, Flores appealed the award of general damages, which she claims is abusively low considering her physical injuries and fear for the life of her unborn child, which she experienced as a result of the accident. McLamb, the Caddo Parish Sheriff, and Clarendon answered the appeal to challenge the allocation of fault. They argue that a greater percentage of fault should be allocated to Flores and that some fault should be allocated to Morris.

DISCUSSION
Allocation of Fault:
The trier of fact is required to compare the relative fault of the parties in assessing liability. In allocating fault, the trial court must consider the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); McCullin v. U.S. Agencies Casualty Ins. Co., 34,661 (La. App.2d Cir.5/9/01), 786 So.2d 269. Factors which may influence the degree of fault assigned to each party include: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk the conduct created; (3) the significance of what the actors sought by the conduct; (4) the capacities of the actors, whether superior or inferior; and (5) any extenuating circumstances which might require the actors to proceed in haste, without proper forethought. Watson, supra; McCullin, supra. The law of comparative fault is applicable in cases involving automobile accidents. Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2d Cir. 1986); Moore v. Rowland, 32,644 (La. App.2d Cir.3/1/00), 753 So.2d 411.
The trial court's apportionment of fault is a factual determination subject to the manifest error standard of review. Moore, supra; Williams v. City of Monroe, 27,065 (La.App.2d Cir.7/3/95), 658 So.2d 820, writ denied, 95-1998 (La.12/15/95), 664 So.2d 451, and 95-2017 (La.12/15/95), 664 So.2d 452.
McLamb argues that the trial court erred in failing to allocate a greater percentage of fault to Flores and in failing to allocate some fault to Morris. With regard to Morris, nothing in the record establishes fault on his part in causing the accident. We find no error in the trial court's failure to allocate any fault to Morris.
A motorist's duty of care includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards. Williams v. City of Monroe, supra. A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. *1262 Edwards v. Horstman, 96-1403 (La.2/28/97), 687 So.2d 1007. To avoid liability, a following motorist who rear-ends another vehicle must prove he was not at fault by establishing that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance under the circumstances. McCullin, supra; Chambers v. Graybiel, 25,840 (La. App.2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. The following motorist may also avoid liability by showing that the lead motorist negligently created a hazard which he could not reasonably avoid. McCullin, supra; Boggs v. Voss, 31,965 (La.App.2d Cir.6/16/99), 741 So.2d 139.
McLamb was in the position of the following vehicle because he came from behind and rear-ended Flores' vehicle. Flores was driving a disabled vehicle at a very slow rate of speed and was attempting to exit onto the median from the left lane of travel when she was hit from behind. McLamb argues that this was not a typical rear-end collision because he was not closely following Flores and she was not proceeding lawfully. He claims the Flores' vehicle was not properly illuminated and that she should have been in the right lane of travel instead of blocking the left lane or attempting to enter the median. Morris argues that Flores created a hazard that he could not reasonably avoid.
By allocating twenty percent of the fault to Flores, the trial court considered her negligence in causing the accident. However, the trial court determined that the greater percentage of fault belonged to McLamb. We find no error in this determination. Flores' vehicle was disabled, so she attempted to maneuver it off the highway when she realized that she could not go further after turning around to return home. Although McLamb argues that Flores' vehicle was not properly illuminated, Morris testified that he saw lights blinking on Flores' vehicle. Morris, who was driving at least 50 to 55 miles per hour, saw Flores' vehicle and realized that there was a problem. McLamb simply did not see Flores' vehicle at any time prior to impact.
By his own testimony, McLamb established that he was not observant of the lane of travel ahead of him. Instead, his attention was focused on Morris's vehicle, which McLamb believed he recognized. McLamb did not even know what he had hit until he was told after the accident. McLamb's claim that Flores created a sudden emergency or a hazardous condition which he could not have reasonably avoided presupposes that he saw the hazard ahead of him and could do nothing to prevent the collision. However, the record clearly establishes that he did not see Flores, because he was not paying attention to the lane of travel before him while he was looking over to Morris. The accident occurred at night on an unlit section of the highway. McLamb had been traveling at a high rate of speed shortly before the accident occurred. He was also focused on the possibility of having to turn around to assist another officer on a vehicular stop. Under these circumstances, McLamb should have exhibited a heightened awareness of his surroundings so as to detect any hazards along the roadway and operated his vehicle accordingly. For these reasons, we find no error in the trial court's allocation of fault.
Damages:
Flores asserts that the trial court's award of general damages in the amount of $12,500 is abusively low and does not make her whole considering the nature and extent of her injuries.
The trial court has much discretion in awarding damages in tort cases. *1263 La. C.C. art. 2324.1. Because of this vast discretion granted the trial court, an appellate court should rarely disturb an award of general damages. Only when the record clearly shows that the trial court abused its discretion in awarding damages in either direction beyond that which a reasonable trier of fact would assess for the effects of a particular injury on a particular party under the particular circumstances should an appellate court either increase or decrease the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Hunt v. Safeway Ins. Co., 35,306 (La.App.2d Cir.12/5/01), 804 So.2d 724; Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 2001-2582 (La.12/14/01), 804 So.2d 647.
Once an abuse of discretion is shown by an articulated analysis of the facts, examination of prior awards in similar cases is proper. An abusively low award is then raised to the lowest amount the trier of fact could have reasonably awarded. Moody v. Blanchard Place Apartments, supra. To determine whether an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. McCullin, supra; Manuel v. State Farm Mut. Auto. Co., 30,765 (La.App.2d Cir.8/19/98), 717 So.2d 277.
The trial court found that Flores' injuries included treatment for two lacerations, one of which required sutures; a two-night hospitalization for observation with regard to possible early delivery; referral to physical therapy for soft tissue injury pain and discomfort; complaints up to April 11, 2000, with treatment for pain in her neck, left scapula region, and tingling and numbness into her left arm; and consultations regarding scar revision surgery which established that she would have residual scarring on her chin.
Flores testified that she was very concerned for her baby's safety after the accident. The baby's heartbeat could not be detected by the paramedics. Once at the hospital, there were concerns that the accident may have torn her placenta, a condition that could have required a Cesarian section and endangered the life of both mother and child as evidenced by consent forms signed by Flores while hospitalized. Flores testified that she began having early contractions after the accident and that she was given medication to slow the contractions. She also testified that she delivered the baby one month early because she kept having pain and soreness that could not be treated with pain medications during the pregnancy. Because of the soft tissue injuries of the neck and shoulder and resulting soreness, Flores was advised not to breast-feed her baby.
Flores suffered two facial lacerations in the accident. One was a stellate laceration extending from the corner of her mouth down to her chin. There were several branches to this laceration. Flores has permanent scarring from the laceration. Two consultations with cosmetic surgeons concluded that a scar revision procedure might result in some improvement but would not remove the scarring. Flores testified that she must now wear a sunblock and special make-up to cover the scar. She testified that the scar is obvious and that people are always asking about it.
An articulated analysis of the facts as set forth in the record and viewed in the light most favorable to the defendants shows that the trial court abused its discretion in awarding only $12,500 in general damages to Flores. This amount is not sufficient to compensate this particular plaintiff, for her particular injuries under the particular circumstances of this case. *1264 Flores' vehicle was hit from behind with violent force which caused both her vehicle and McLamb's vehicle to flip over. Flores, who was seven months pregnant and covered with blood, crawled from her crumpled truck and was transported by ambulance to LSUMC. She feared for the well-being of her unborn child, and the accident impacted his birth and her ability to breast-feed him. Flores will also be scarred for life as a result of the stellate facial laceration sustained in the accident. Under these circumstances, we must determine what is the lowest amount which the trial court could have reasonably awarded this plaintiff for the laceration, soft tissue injuries, and pregnancy-related effects of the accident.
In reviewing prior awards, we found some cases that awarded damages for mental anguish or fear of the effect of the accident on a pregnancy and other cases dealing with facial lacerations and scars. Pregnancy-related cases include Whatley v. Jones, 157 So.2d 351 (La.App. 3d Cir. 1963), in which a woman, who was seven months pregnant at the time of the accident, received $5,000 in general damages when the accident resulted in premature labor pains and premature delivery; Gomez v. Galmiche, 433 So.2d 386 (La.App. 4th Cir.1983), in which a woman, who was approaching her third trimester of pregnancy when involved in an automobile accident, received $12,000 in general damages when she suffered knee and shoulder pain which could not be treated with medication due to her pregnancy, and experienced fear and anxiety about the baby's health during the remainder of her pregnancy; and Gagnet v. Zummo, 487 So.2d 721 (La. App. 5th Cir.1986), in which a pregnant woman received $10,000 in general damages when, as a result of an automobile accident, she suffered a neck and back injury which could not be adequately treated with medication due to the pregnancy, groin pain, and fear over the health of her child which resulted in a prolonged period of labor.
Similar cases in which general damages were awarded for facial scars include Barillas v. Carrion, 96-746 (La.App. 5th Cir.3/25/97), 692 So.2d 1217, in which a woman received $11,000 in general damages as a result of injuries sustained in a car accident, including a lip laceration with residual scarring of her chin, neck strain, back strain, and headaches; Neason v. Transit Managment of Southeast Louisiana, Inc., XXXX-XXXX (La.App. 4th Cir.4/18/01), 789 So.2d 31, in which a child injured in a automobile accident received $20,000 in general damages for facial lacerations which required stitches and left permanent scars about which he was sometimes teased; and Hunt v. Safeway Insurance Company, 35,306 (La.App.2d Cir.12/5/01), 804 So.2d 724, in which a woman involved in an automobile accident was awarded $17,500 in general damages when she sustained a laceration of her eyelid which resulted in permanent scarring and damage to her eyelashes.
The damages awarded in these six cases for either facial lacerations and scarring or pregnancy-related injuries with soft tissue injuries either equal or exceed the total damages awarded in the case sub judice. Flores suffered the full range of injures mentioned in the cases cited above, including facial lacerations with scarring, soft tissue injuries which could not be effectively treated with pain medication during her pregnancy and which prevented her from breast-feeding the baby, and temporary fear for the life of her unborn child. Under the particular circumstances of this case, we find that the lowest amount the trier of fact could have reasonably awarded Flores to be $25,000 in general damages. Accordingly, we amend the trial *1265 court's judgment to increase Flores' general damages award to $25,000.

CONCLUSION
For the reasons mentioned, we affirm the trial court's judgment, except as to the award of general damages to Angela Flores, which we amend to increase the award to $25,000. Costs are assessed to the defendants-appellees, James McLamb, Caddo Parish Sheriff, and Clarendon National Insurance Company.
AMENDED, AND AFFIRMED AS AMENDED.
NOTES
[1] At trial, Angela Flores, who had married since the time of the accident, was referred to as Angela Leach. This opinion will refer to her as Angela Flores, the name generally used in the suit filings.