# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1471


**MARGARET MONTALVO RICHARD**

**VERSUS**

**HAROLD ARTIGUE, ET AL.**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20085512
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**REVERSED IN PART, AFFIRMED IN PART, AMENDED IN PART AND RENDERED.**

**Kenneth Winslow Benson  Jr.**
**Attorney at Law**
**9100 Bluebonnet Ctr. Blvd.,#300**
**Baton Rouge, LA 70809**
**(225) 293-7272**
**COUNSEL FOR DEFENDANT APPELLEE:**
 **Harold Artigue**
 **Louisiana Services, L.L.C.**
 **Liberty Mutual Fire and Casualty Co**

**Barry J. Heinen**
**Attorney at Law**
**1502 W. University Ave.**
**Lafayette, LA 70506-3342**
**(337) 237-3550**
**COUNSEL FOR PLAINTIFF APPELLANT:**
    **Margaret Montalvo Richard**
    **Frank Richard**

**SAUNDERS, Judge.**

This case involves an automobile accident wherein a jury awarded the plaintiff driver, *inter alia*: (1) $225,000.00 for future wages lost or loss of earning capacity; (2) $555,833.00 for future medical expenses; (3) $10,000.00 in past wages lost; and (4) $325,000.00 in general damages. The jury allocated forty (40) percent of the fault to sudden emergency/fault of third party. Thus, these awards were reduced accordingly.

The plaintiff driver appealed. We reverse the allocation of fault and render that the defendant driver was one hundred (100) percent at fault. We affirm the jury's award of $225,000.00 for future lost wages, $10,000.00 in past wages lost, and $325,000.00 in general damages. We amend the judgment to reflect that the plaintiff driver is awarded $637,888.00 in future medical expenses.

## FACTS AND PROCEDURAL HISTORY:

On October 18, 2007, a three-car automobile accident occurred on Interstate (although currently an Intrastate) 49 at the Gloria Switch Road overpass in Lafayette Parish, Louisiana. Traffic that morning was congested due to a combination of normal morning traffic, a wet roadway due to rain and dew that morning, and an automobile accident that occurred prior to the one at issue in the case before us.

The three automobiles were southbound in the left lane of travel. The lead automobile was driven by plaintiff, Margaret Richard (hereinafter "Richard"), the second by Seth Menard, and the third by defendant, Harold Artigue. The automobiles driven by Richard and Seth Menard stopped for a different accident that occurred on the roadway before them. The automobile driven by Harold Artigue failed to stop, struck the Menard automobile, and pushed it into the automobile driven by Richard.

On September 26, 2008, Richard filed a petition for damages against Harold Artigue, Louisiana Service, L.L.C., Artigue's employer for whom Harold Artigue was driving within the course and scope of his employment, and Liberty Mutual Fire and Casualty Company (collectively defendants hereinafter referred to as "Artigue"). Richard amended her petition on January 18, 2011, to add the damages of her husband, Frank Richard for loss of consortium

Artigue asserted in their amended answer the affirmative defense of sudden emergency. Richard filed a motion to strike the amended answer on March 9, 2011. The trial court denied the motion.

The parties stipulated that Harold Artigue was the employee of Louisiana Services, L.L.C., that Liberty Mutual Fire and Casualty insured Louisiana Services, L.L.C. and Harold Artigue on the day of the accident, and that the Harold Artigue and Louisiana Services, L.L.C. were additionally insured by Chartis as an excessive carrier.

A jury trial was held from March 28, 2011, through April 1, 2011. Prior to submitting the matter to the jury, Richard moved for a directed verdict that Artigue was one hundred (100) percent at fault for the accident. The trial court denied the motion. Thereafter, prior to submission of the jury interrogatories, Richard objected to them allowing the jury to assign fault to anyone other than Artigue. The trial court overruled the objection.

On April 1, 2011, the jury rendered a verdict awarding Richard various amounts for particular items, including but not limited to, $225,000.00 for future lost wages, $555,833.00 for future medical expenses, $10,000.00 for past lost wages, and $325,000.00 for general damages. Further, the jury allocated sixty (60) percent of the fault for the accident to Harold Artigue and forty (40) percent of the fault for the accident to sudden emergency/third party fault.

Richard timely filed the appeal before us asserting seven assignments of error. The first three assignments relate to the jury's allocation of fault. The final four relate to the jury's damage awards. They are as follows:

## ASSIGNMENTS OF ERROR:

1. The trial court committed reversible error by providing a jury verdict form over plaintiff's objection that included interrogatories regarding the existence of a sudden emergency, third party fault or the fault of Margaret Richard.

2. The trial court committed reversible error by denying plaintiff's Motion for a Directed Verdict against defendant regarding the lack of evidence introduced by defendant regarding the issue of third party fault or sudden emergency.

3. The jury committed manifest error when it assessed forty (40%) percent of the fault in this accident to sudden emergency or third party fault.

4. The jury committed manifest error when it awarded plaintiff, Margaret Richard, future wages loss or loss of earning capacity of only $225,000.00, when the evidence at trial supported a much higher award.

5. The jury committed manifest error when it awarded to plaintiff, Margaret Richard, $555,833.00 in future medical when the evidence at trial supported by the experts was a much higher award.

6. The jury committed manifest error when it awarded to plaintiff, Margaret Richard, only $10,000.00 in past wage loss when the evidence at trial supported a much higher award.

7. The jury committed manifest error when it awarded plaintiff, Margaret Richard, only $325,000.00 in general damages for the extreme injuries suffered by Margaret Richard.

## ASSIGNMENT OF ERROR NUMBERS ONE TWO, AND THREE:

Richard contends in her first two assignments of error that the trial court committed reversible error by providing a jury verdict form over her objection that included interrogatories regarding the existence of a sudden emergency, third party fault, or the fault of Margaret Richard and by denying her Motion for a Directed Verdict against defendant regarding the lack of evidence introduced by defendant

regarding the issue of third party fault or sudden emergency. In her third assignment of error, Richard contends that the jury committed manifest error when it assess forty (40%) percent of the fault in this accident to sudden emergency or third party fault.

Each of these three assignments of error has a different standard of review. A trial court has discretion in determining the contents of a jury form, thus, the standard of review on the first asserted assignment of error is whether the trial court abused that discretion. *Kelly-Williams v. AT&T*, 11-1179 (La.App. 3 Cir. 2/1/12), __ So.3d __. In the second assignment of error, the applicable standard of review on a motion for directed verdict is whether the evidence in the record is such that a reasonable person could not reach a verdict to the contrary. *Hebert v. BellSouth Telecommunication, Inc.*, 01-223 (La.App 3 Cir. 6/6/01), 787 So.2d 614, *writ denied*, 01-1943 (La. 10/26/01), 799 So.2d 1145. Finally, in the third assignment of error, it is well-settled that a jury's allocation of fault is a finding of fact that is subject to the manifest error standard of review. *Duncan v. Kansas City Southern Railway Co.*, 00-66 (La. 10/30/00), 773 So.2d 670.

Although these assignments of error have three different standard of review, they have a common denominator, to question whether the record supports a finding of fault by anyone other than Artigue. Accordingly, we will combine these three assignments and review the record on this issue.

Louisiana Revised Statutes 32:81(A) states, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

4

This court, in *Cox v. Shelter Ins. Co.*, 09-958 (La.App. 3 Cir. 4/7/10), 34 So.3d 398, *writ denied*, 10-1041 (La.9/17/10), 45 So.3d 1044, dealt with a situation similar to the case before us. In *Cox*, we stated the following:

> If a following motorist strikes the forward vehicle from the rear, he or she is presumed to have breached the duty imposed by La. R.S. 32:81(A). *Mart v. Hill*, 505 So.2d 1120 (La.1987).
>
>> A following motorist may, however, rebut the presumption by demonstrating that he or she had his car under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances, or by proving that the driver of the lead car negligently created a hazard which the following motorist could not reasonably avoid. *McCullin v. U.S. Agencies Cas. Ins. Co.*, 34,661 (La.App. 2 Cir. 5/9/01), 786 So.2d 269. The following motorist bears the burden of showing he was not negligent. *Wheelis v. CGU Ins.*, 35,230 (La.App. 2 Cir. 12/7/01), 803 So.2d 365.
>
> *Menard v. Federated Mut. Ins. Co.*, 05-85, pp. 3-4, (La.App. 3 Cir. 6/22/05), 906 So.2d 746, 750, *writ denied*, 05-1925 (La.3/10/06), 925 So.2d 506.

*Cox*, 45 So.3d at 408.

There is no dispute that Artigue's truck struck the Menard automobile, which, in turn, struck the Richard automobile from the rear. Further, there is no dispute that Artigue is presumed to be in breach of the duty imposed by La.R.S. 32:81(A). Thus, Artigue had the burden to prove that, "he [] had his car under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances, or by proving that the driver of the lead car negligently created a hazard which the following motorist could not reasonably avoid." *Cox*, 45 So.3d at 408 (*citing McCullin v. U.S. Agencies Cas. Ins. Co.*, 34,661 (La.App. 2 Cir. 5/9/01), 786 So.2d 269).

After thoroughly reviewing the record, we find a complete absence of any evidence that Artigue carried his burden. Artigue was faced with congested morning traffic on Interstate 49 near Lafayette, Louisiana. The roads were wet.

5

These two facts, alone, should heighten the awareness of a reasonably prudent driver that a stopped vehicle was a possibility. He was traveling in the left lane at approximately forty-five to fifty miles per hour while passing slower traffic in the right lane.

At least two cars, one driven by Richard, and another driven by Seth Menard, came upon the scene of another accident and were able to stop. The accident report prepared by State Police for this accident stated that Artigue's vision was not obscured and that he was inattentive. Further, the police report verified that Artigue was issued a citation for exceeding a safe speed limit.

Artigue testified that he did not see the vehicles stopped ahead of him until he was one car length from the stopped vehicle driven by Menard. He claimed that his failure to see the vehicle until it was too late was due to the overpass obscuring his vision.

Mr. Vernon Tekell, Jr., an expert in civil engineering, testified regarding whether a person travelling where Artigue was travelling could see a stopped vehicle at a distance greater than one car length. Given an eye height of five feet for a person riding in a truck, as Artigue was, and the height of two feet for the taillights of a vehicle, the industry standard, Tekell opined that Artigue had a minimum sight distance of eight hundred and thirty feet. Given Artigue's claimed speed, his vehicle was moving at approximately seventy-three feet per second. Thus, according to the uncontroverted testimony of Tekell, Artigue could have seen a stopped vehicle for more than ten seconds.

Moreover, the testimony of both Menard and Richard was that there were other vehicles stopped ahead of them. Thus, Artigue, had he been paying attention to the road ahead of him, would have even more notice that traffic was slowing and/or stopping ahead.

6

The trial court, in denying Richard's motion for directed verdict, noted that it was raining at the time of the accident. While this may be accurate, it is also accurate that the other vehicles, with less vision ahead due to a lower elevation of eye height, were able to stop despite the rain while Artigue did not. Regardless, the circumstance present, i.e. a wet road, was quite evident to Artigue given that it was raining.

Accordingly, given the status of the record, we find that the trial court abused its discretion by providing a jury verdict form that included interrogatories regarding the existence of a sudden emergency, third party fault, or the fault of Margaret Richard and by denying Richard's motion for a directed verdict against Artigue. Further, we find that the jury was manifestly erroneous in allocating forty percent (40%) of fault for the accident to sudden emergency or third party fault. As such, we reverse the judgment of the trial court and render that Artigue was one hundred percent (100%) at fault for the accident.

**ASSIGNMENT OF ERROR NUMBERS FOUR, FIVE, SIX AND SEVEN:**

Richard asserts in her fourth through seventh assignments of error that the jury committed manifest error in the following awards given to her: (1) $225,000.00 for future wages lost or loss of earning capacity; (2) $555,833.00 for future medical expenses; (3) $10,000.00 in past wages lost; and (4) $325,000.00 in general damages. Richard claims that these awards are low because the evidence at trial supported a much higher award.

> The jury's determination of the amount, if any, of an award of damages . . . is a finding of fact. The Civil Code provides that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La. C.C. art. 2324.1. As we stated in *Bonin v. Ferrellgas*, 03-3024 (La.7/2/04), 877 So.2d 89, 94-95:

7

> A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error unless it is clearly wrong. . .
>
> Under the manifest error standard, in order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. On review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. (Cites omitted.)

*Ryan v. Zurich American Ins. Co.*, 07-2312, p. 7 (La.7/1/08), 988 So.2d 214, 219.

**Future Lost Wages or Loss of Earning Capacity:**

"Awards for loss of future income are inherently speculative, and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the courts must exercise sound judicial discretion in determining these awards, and render awards which are consistent with the record and which work an injustice on neither party." *Broussard v. Lafayette Ins. Co.*, 08-116 (La.App. 3 Cir. 5/28/08), 984 So.2d 253, 255 (quoting *Morgan v. Willis–Knighton Med. Ctr.*, 456 So.2d 650, 658 (La.App. 2 Cir.1984)).

Richard argues that the amount reached by the jury of $225,000.00 was manifestly erroneous because it is below what either economist testified to as her future lost wages. According to Richard her economist, Dr. Doug Womack opined that her future lost wages were $437,893.00 plus $13,067.00 in loss of employer paid insurance and Artigue's economist, Dr. Pat Culbertson, opined that Richard's future lost wages were $330,265.00. Moreover, according to Richard, these numbers even could be greater if one were to assume her retirement age to be sixty-seven (67), per to the social security retirement age, rather than fifty-seven

(57), per the retirement age used by both economists based on various social factors.

While Richard is accurate that these are the numbers were stated by the economists, those numbers are based on questions wherein the economists were to assume that she could not ever work again. Dr. Lyle LeCorgne, a psychiatrist, opined that Richard could not work again due to stress coupled with her pain from the accident. There is no dispute that the source of Richard's pain is the accident. However, there is a question about as to whether the sole source Richard's stress was attributable to the accident.

There is evidence in the record that she could perform sedentary work prior to her then current employer, Peppertree, being taken over by the Lynd Company. Her former job qualifies as sedentary work. The accident occurred in October, 2007, and Richard did not cease working until early in 2010 when she was fired by the Lynd Company. Regarding the source of stress and the change in employer, Richard testified that she filled out her initial patient questionnaire with Dr. LeCorgne as follows:

> Q:    And this is a multi-page questionnaire, but on page eight (8) of the questionnaire appears the question, "How do you like your present job - -
>
> . . . .
>
> Q:    The top question on page eight (8) of the questionnaire. The question was - -
>
> A:    (Reading) "How do you like your present job and how do people treat you?"
>
> . . . .
>
> Q:    Will you read your answer please out loud?
>
> A:    Yes. (Reading) "I love the business. I've been doing this for over twenty (20) years, and I am highly respected in the

business. Very stressed with the Lynd Company." But they just took over. It was hard.

. . . .

Q:  And that's true, the Lynd Company taking over the Peppertree. It was stressful to you.

A:  Yes. It was a lot to learn. And we managed 304 apartments. It's stressful for any company that owned it.

Q:  Okay. Ms. Richard, I don't mean to imply anything. I think you – I'm sure you were doing just a fine job with Peppertree and JTS until the Lynd Company took over, and that's what I was trying to establish with you. It was different under the Lynd Company.

A:  It was very different.

Therefore, the jury could have reasonably found that Richard may return to work in the future or that at least part of the source of her debilitating stress that prevents her from working was the change of employer rather than the accident.

Moreover, it is clear from the record that Richard had some goodwill with her former employer, Peppertree. Thus, it is within the jury's discretion to find that, while the accident hindered Richard's level of work with Peppertree, that company was willing to consider her history with it and make allowances, whereas that was not the case with the Lynd Company.

Given the inherently speculative nature of lost future wages, we cannot say that the award is not reasonably consistent with the record. As such, we find that the jury was not manifestly erroneous in awarding Richard $225,000.00 for future lost wages.

**Future Medical Expenses:**

Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. *Boothe v. New Orleans Public Service, Inc.*, 447 So.2d 620 (La.App. 4th Cir.1984); *Sikes v.*

10

> *McLean Trucking Co.*, 383 So.2d 111 (La.App. 3d Cir.1980). An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. *Simmons v. Custom-Bilt Cabinet & Supply Co.*, 509 So.2d 663 (La.App. 3d Cir.1987); *Sikes*, supra.

*Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5, 8 (La.App. 3 Cir. 1991).

In the case before us, the jury awarded Richard $555,833.00 in future medical expenses. There is no dispute that Richard is entitled to some amount in future medical expenses. However, the jury was presented with conflicting medical testimony on what treatments were more likely than not necessary in the future and conflicting economic testimony forecasting the increase in medical costs.

Dr. Womack estimated the future cost of Richard's medical care to be $1,323,097.00 based on Richard receiving all of the recommended treatments, including those suggested by Richard's treating pain management physician, Dr. Stephen Wyble. Dr. Sandra Weitz performed a second medical opinion. She testified that she disagreed with Dr. Wyble's recommendation regarding Lidoderm patches, epidurals, massage therapy, the frequency of replacement of the Richard's battery in her dorsal column stimulator, and, to some extent, the future psychological treatment. Dr. Womack testified that his estimated future medical expenses would drop to $866,571.00 if her were to adjust for Dr. Weitz's testimony.

Dr. Culbertson opined that his estimated future medical expenses would be $979,536.00 according to Dr. Wyble's recommendations. When questioned about what his estimates would be adjusting for Dr. Weitz's recommendations, he stated that the amount would be $637,888.00.

11

Thus, the jury was presented with four reasonable amounts: (1) $1,323,097.00; (2) $979,536.00; (3) $866,571.00; and (4) $637,888.00. All of these amounts are greater than that awarded by the jury, $555,833.00.

Artigue argues that the jury's award can be deemed reasonable considering the testimony of Dr. Pat Jeaneau, a neurosurgeon. Dr. Jeaneau's testified that *perhaps* an alternate treatment was available to Richard that *may* offer her some relief. His use of "perhaps" and "may" clearly indicate mere speculation and do not reach the necessary level of a reasonable degree of medical probability that is usually indicated by use of language such as "likely" or "more probable than not." As such, Artigue's argument is without merit.

Therefore, it is apparent that even considering the least amount of medical care and the lowest estimated increase in medical expenses, the jury committed manifest error in only awarding Richard $555,833.00 in future medical expenses. Accordingly, we amend that portion of the judgment relating to the award of future medical expenses to reflect an amount of $637,888.00, the lowest reasonable amount the jury could have awarded given the medical testimony in the record.

**Past Lost Wages:**

> Damages for loss of past wages are not necessarily limited to a multiplier of the amount earned at the time of injury. *Folse v. Fakouri*, 371 So.2d 1120 (La.1979). It can be computed on the amount the plaintiff would in all probability have been earning at the time of trial. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

*Callihan v. Town of Vinton*, 95-665, p. 7 (La.App. 3 Cir. 12/6/95), 668 So.2d 735, 741.

Drs. Womack and Culbertson testified that Richard, had she continued to work from June of 2010 up to the date of trial, March 28, 2011, would have probably have earned $42,466.00. Thus, seemingly, the jury's award of $10,000.00 to Richard for past lost wages is manifestly erroneous.

12

However, as we stated above in our discussion of future lost wages, the jury was presented with evidence that stress was one cause of Richard's inability to work. Given Richard's testimony cited above, the jury could have reasonably found that the entirety of that stress was not directly related to the accident. As such, we affirmed the jury's award above of an amount less that those put forth by both Drs. Womack and Culbertson as to Richard's total future lost wages.

Here, we reach a similar conclusion. The jury could reasonably conclude that stress was a major factor that caused Richard's inability to work after the accident and prior to the trial and that Richard's stress was not entirely caused by the accident. Thus, it could reasonably have found that $10,000.00 was ample to compensate Richard for the past lost wages attributable to the accident. As such, we affirm the jury award for past lost wages.

**General Damages:**

An appellate court's review general damage awards is to determine whether the trier of facts' exercise of discretion was valid rather than consideration of what it considers appropriate. *Cormier v. Republic Ins. Co.*, 11-632 (La.App. 3 Cir. 1/18/12) __ So.3d __. "The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

Here, Richard underwent a cervical fusion after the accident. Further, she underwent a dorsal column stimulator implantation with subsequent revision.

Given the facts of this case, we cannot say that the jury's award, while within the lower range of a reasonable amount, is abusively low. There is

testimony in the record from Dr. Wyble that Richard has "definitely improved" under his care and that her pain is "under much better control." Further, Dr. Wyble went on to testify that on her last visit Richard characterized her pain as "three (3) out of ten (10)" and that that since her last visit with Dr. Wyble "her pain was better by fifty (50 to seventy-five (75) percent."

Accordingly, we find that the jury's award of $325,000.00 was not abusively low. As such, we affirm the award.

## CONCLUSION:

Margaret Richard raised seven assignments of error. The first three have a common denominator so as to question whether the record supports a finding of fault for the automobile accident by anyone other than Harold Artigue. We find credence with this assertion. Thus, we reverse the apportionment of fault made by the jury and render that one hundred percent of the fault is attributed to Harold Artigue.

The final four assignments of error contend that the jury committed manifest error in the following awards given to her: (1) $225,000.00 for future wages lost or loss of earning capacity; (2) $555,833.00 for future medical expenses; (3) $10,000.00 in past wages lost; and (4) $325,000.00 in general damages. We affirm all awards excepting that of $555,833.00 for future medical expenses. We amend the judgment to reflect that the award for future medical expenses is $637,888.00.

**REVERSED IN PART, AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.**